Nos. 2014-1352

—————————————————

# United States Court of Appeals for the Federal Circuit

—————————————————

METSO MINERALS, INC.,

*Plaintiff-Appellant,*

v.

TEREX CORPORATION,

*Defendant-Appellee,*

AND

EMERALD EQUIPMENT SYSTEMS, INC., POWERSCREEN INTERNATIONAL DISTRIBUTION LIMITED (NOW KNOWN AS TEREX GB LIMITED), AND POWERSCREEN NEW YORK, INC.,

*Defendants.*

———————————————————————————————

Appeal from the United States District Court for the Eastern District of New York in Case No. 06-CV-1446, Judge Arthur D. Spatt

———————————————————————————————

## BRIEF OF
## PLAINTIFF-APPELLANT METSO MINERALS, INC.

Michael C. Stuart
Lisa A. Ferrari
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
212-883-4900

May 12, 2014

Attorneys for Plaintiff-Appellant
METSO MINERALS, INC.

## <u>CERTIFICATE OF INTEREST</u>

Counsel for appellant, Metso Minerals, Inc., certifies the following:

1.     The full name of every party or amicus represented by me is:

METSO MINERALS, INC.

2.     The name of the real party in interest represented by me is:

METSO MINERALS, INC.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

METSO CORPORATION

4.     The names of all law firms and the attorneys, partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

COZEN O'CONNOR
COHEN PONTANI LIEBERMAN & PAVANE LLP
Michael C. Stuart
Lisa A. Ferrari
Marilyn Neiman
Teodor J. Holmberg

May 12, 2014                                    /s/ Michael C. Stuart
                                                Michael C. Stuart

i

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES.......................................................................iii

STATEMENT OF RELATED CASES ....................................................... 1

JURISDICTIONAL STATEMENT............................................................ 1

STATEMENT OF THE ISSUES ............................................................... 2

STATEMENT OF THE CASE ................................................................... 3

STATEMENT OF THE FACTS ................................................................. 6

SUMMARY OF THE ARGUMENT ....................................................... 14

ARGUMENT........................................................................................... 16

I.     Standard of Review ....................................................................... 16

II.    The District Court Contravened the Mandate of This Court That No
       Appellate Costs Were Awarded to Either Party .............................. 17

       A.     Terex Waived its Entitlement to Appellate Costs................................. 22

       B.     The District Court Incorrectly Faulted Metso for Not Appealing
              the Bond Order at the Time it Was Entered........................................... 23

III.   The Parties Reached no Agreement Concerning Payment of Bond Costs
       in the Event of a Complete Reversal of the Infringement Judgment ............... 25

IV.    The District Court Abused its Discretion In Modifying the Judgment to
       Add the $100,000 Installment Payment Subsequently Paid by Terex ............. 30

       A.     The District Court's Award of $400,000 Instead of $500,000 Was
              Not a Clerical or Typographical Mistake.............................................. 32

       B.     The $100,000 Payment Was Made After the Appeal Had Been
              Decided, and Terex Had Failed to Seek Rescission of the Bond .......... 34

CONCLUSION....................................................................................... 38

ADDENDUM

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adsani v. Miller,*
   139 F.3d 67 (2d Cir. 1998) ...................................................16, 17, 20

*Beatrice Foods Co. v. New England Printing and Lithographic Co.,*
   930 F.2d 1572 (Fed. Cir. 1991) ...........................................16, 17, 25

*Bingham Pump Co. v. Edwards, Inc.,*
   118 F.2d 338 (9th Cir. 1941) .............................................................24

*Bose Corp. v. Consumers Union of U.S., Inc.,*
   806 F.2d 304 (1st Cir. 1986)..............................................................36

*DLC Mgmt. Corp. v. Town of Hyde Park,*
   179 F.3d 63 (2d Cir. 1999) ................................................................18

*Dudley ex rel. Estate of Patton v. Penn-America Ins. Co.,*
   313 F.3d 662 (2d Cir. 2002) ..............................................................33

*Employers Mutual Casualty Co. v. Key Pharmaceuticals, Inc.,*
   886 F.Supp. 360 (S.D.N.Y.1995), ......................................................32

*Ernst v. Child and Youth Services of Chester County,*
   108 F.3d 486 (3rd Cir.1997) ..............................................................24

*Fiskars v. Hunt Mfg. Co.,*
   279 F.3d 1378 (Fed. Cir. 2002) .........................................................17

*Flower City Painting Contractors, Inc. v. Gumina Const. Co.,*
   591 F.2d 162 (2d Cir. 1979) ..............................................................29

*Invention Submission Corp. v. Dudas,*
   413 F.3d 411 (4th Cir. 2005) .............................................................21

*Kelley v. Metro. County Bd. of Educ.,*
   773 F.2d 677 (6th Cir. 1985) .............................................................18

*L-3 Communications Corp. v. OSI Sys., Inc.*,
607 F.3d 24 (2d Cir. 2010) ....................................................16, 18, 28

*Lee v. Joseph E. Seagram & Sons, Inc.*,
592 F.2d 39 (2d Cir. 1979) ........................................................33

*Lerman v. Flynt Distributing Co., Inc.*,
789 F.2d 164 (2d Cir. 1986) ......................................................28

*MacEwen Petroleum, Inc. v. Tarbell*,
136 F.3d 263 (2d Cir. 1998) ......................................................23

*Matura v. U.S.*,
189 F.R.D. 86 (S.D.N.Y. 1999) ..................................................32

*McDonald v. McCarthy*,
966 F.2d 112 (3d Cir. 1992) ......................................................18

*Meyers v. Baltimore County, Md.*,
Civ. Action No. ELH-10-549, 2014 WL 1348007
(D.Md. April 3, 2014) ................................................................21

*Moore v. County of Delaware*,
586 F.3d 219 (2d Cir. 2009) ......................................................19

*Paddington Partners v. Bouchard*,
34 F. 3d 1132 (2d Cir. 1994) ................................................17, 32

*Panduit Corp. v. All States Plastic Mfg. Co., Inc.*,
744 F.2d 1564 (Fed. Cir. 1984) ..................................................16

*Polanco v. Allan*,
No. 93-CV-1498, 1996 WL 377074 (N.D.N.Y. July 5, 1996) ..........32

*Record Club of America, Inc. v. United Artists Records, Inc.*,
731 F. Supp. 602 (S.D.N.Y. 1990) ..............................................20

*Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*,
497 F.3d 805 (8th Cir. 2007) ......................................................20

*Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*,
481 F.3d 442 (7th Cir. 2007) ......................................................20

iv

*Richardson-Merrell, Inc. v. Koller*,
   472 U.S. 424 (1985) ...................................................................................16

*In re Ricoh Co. Ltd. Patent Litigation*,
   661 F.3d 1361 (Fed. Cir. 2011) ...........................................................22, 28, 29

*Saunders v. Washington Metropolitan Area Transit Authority*,
   505 F.2d 331 (D.C. Cir. 1974) ...........................................................27, 28, 29

*Scarrella v. Midwest Fed. Sav. & Loan*,
   536 F.2d 1207 (8th Cir.1976) ....................................................................24

*Square Constr. Co. v. Wash. Metro. Area Transit Auth.*,
   800 F.2d 1256 (4th Cir. 1986) ...................................................................18

*Summit Tech., Inc. v. Nidek Co., Ltd.*,
   435 F.3d 1371 (Fed. Cir. 2006) ..................................................................16

*Tincher v. Piasecki*,
   520 F.2d 851 (7th Cir. 1975) ....................................................................24

*Tung Mung Dev. Co., Ltd. v. U.S.*,
   354 F.3d 1371 (Fed. Cir. 2004) ..............................................................18, 19

*Williams v. Breslin*,
   No. 03 Civ. 1848 RWS, 2004 WL 2368011 (S.D.N.Y. Oct. 20,
   2004) ...............................................................................................32

## Statutes

28 U.S.C. § 1292(c)(2)...................................................................................23

28 U.S.C. §1295(a)(1).....................................................................................1

28 U.S.C. § 1920........................................................................................20, 22

## Federal Rules

Rule 7, Fed.R.App.P. ...............................................................................6, 16

Rule 8, Fed.R.App.P. ...................................................................................6

Rule 8(a)(1)(B), Fed.R.App.P...........................................................................25

Rule 39, Fed.R.App.P. ...................................................................*passim*

Rule 39(a)-(e), Fed.R.App.P. ...................................................................20

Rule 30(b), Fed.R.Civ.P. ...................................................................27

Rule 54(d), Fed.R.Civ.P. ...................................................................17

Rule 59(e), Fed.R.Civ.P. ...................................................................*passim*

Rule 60, Fed.R.Civ.P. ...................................................................17

Rule 60(a), Fed.R.Civ.P. ...................................................................*passim*

Rule 62(d), Fed.R.Civ.P. ...................................................................6, 25

## Other Authorities

16 Charles A. Wright et. al., Fed. Prac. & Proc. Juris. § 3921 (2d ed.) ..................24

Restatement (First) of Contracts § 71(a)...................................................................29

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, appellant states as follows:

(a)      An appeal from the same civil action was previously before this Court;

(1)      The title and number of that earlier appeal was *Metso Minerals, Inc. v. Powerscreen International Distribution, Limited (now known as Terex GB Limited), Powerscreen New York, Inc. and Emerald Equipment Systems, Inc., and Terex Corporation;*

(2)      The date of the decision was May 14, 2013;

(3)      The composition of the panel was Circuit Judges Dyk, Mayer, and Reyna;

(4)      The opinion was not selected for publication in the Federal Reporter but may be found at 526 Fed.Appx. 988 (Fed. Cir. 2013); and

(b)      Appellant is aware of no case that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The Court's jurisdiction to hear this appeal is based upon 28 U.S.C. §1295(a)(1), under which this Court has exclusive jurisdiction of an appeal from a final decision of a district court whose jurisdiction, in whole or in part, arises under an Act of Congress relating to patents.

On May 14, 2013, this Court issued an Opinion and Order reversing the district court's judgment of patent infringement in favor of Metso Minerals, Inc. ("Metso").

On November 27, 2013, the district court entered a Short Order in favor of Terex Corporation ("Terex") and against Metso in the amount of $400,000 as reimbursement of the bond premium paid by Terex in connection with its appeal to this Court. Judgment on that Order was entered on December 5, 2013. Metso filed a timely Notice of Appeal on December 9, 2013.

On January 29, 2014, the district court entered an Order pursuant to Rule 60(a), Fed.R.Civ.P., amending the December 5, 2013, Short Order so as to award Terex $500,000 as reimbursement for the bond premiums paid by Terex. An Amended Judgment was entered on January 31, 2014. Metso filed a timely Amended Notice of Appeal on February 3, 2014.

## STATEMENT OF THE ISSUES

1. Whether the district court incorrectly interpreted Rule 39(e), Fed.R.App.P., as authorizing it to award Terex the cost of a supersedeas bond where this Court on appeal denied Terex its appellate costs and Terex did not request reconsideration of this Court's decision?

2. Whether the district court erroneously concluded that Metso had agreed to pay the bond premium in the event of a complete reversal of the judgment,

although contracting out of the provisions of Rule 39, Fed.R.App.P., requires a plain and clear agreement, free from ambiguity?

     3.     Whether the district court erroneously determined that Terex's request to amend the judgment to add a $100,000 bond premium payment made by Terex *after* the appeal had been decided addressed merely a clerical error subject to modification under Rule 60(a), Fed.R.Civ.P., or instead altered the parties' substantive rights and was therefore subject to denial as an untimely motion under Rule 59(e), Fed.R.Civ.P., and whether on the merits, Terex's failure to mitigate its damages instead warranted denial of Terex's request?

## **STATEMENT OF THE CASE**

Published decisions:

| |
|---|
| 681 F.Supp.2d 309 |
| 722 F.Supp.2d 316 |
| 788 F.Supp.2d 71 |
| 833 F.Supp.2d 282 |
| 833 F.Supp.2d 321 |
| 833 F.Supp.2d 333 |
| 526 Fed.Appx. 988 |
| 297 F.R.D. 213 |

3

In March 2006, plaintiff-appellant Metso filed a Complaint in the U.S. District Court for the Eastern District of New York against Terex and other defendants, alleging infringement of Metso's patent for aggregate mobile screeners.  On December 6, 2010, a jury found Metso's patent willfully infringed and not invalid, and awarded damages of $15.8 million.  The jury also rendered an advisory verdict that defendants had not proven laches and inequitable conduct. *See* District Court Docket Sheet (DE 501-7).  On July 21, 2011, the district court issued a permanent injunction.  *See id.* (DE 638).

On December 8, 2011, the district court denied all of defendants' post-trial JMOL motions, affirmed the jury's verdict, doubled the damages awarded by the jury due to defendants' willful infringement, thereby raising the award to $31.6 million, ruled that Metso was entitled to pre-judgment and post-judgment interest in amounts to be subsequently determined, and ordered that defendants would have to pay supplemental infringement damages in an amount to be subsequently determined.  *See* Decisions of District Court reported at 833 F.Supp.2d 282, 833 F.Supp.2d 321, and 833 F.Supp.2d 333.

Following defendants' appeal, on May 6, 2013, this Court reversed the judgment of the district court, ruling, *inter alia,* that Metso's patent was invalid due to obviousness.  The Court also ruled that "no costs" were to be awarded to either party.  (A54-A71, at A71).  Following the denial of a motion for

reconsideration by Metso, this Court's Mandate issued on August 16, 2013.  (A79-A80; A81-A101).

On September 9, 2013, Terex[1] filed a motion in the district court seeking release of the bond it had posted in connection with its appeal, and seeking reimbursement from Metso of the cost of the bond, which Terex claimed was $400,000.  *See* District Court Docket Sheet (DE 734).  On September 13, 2013, Terex filed a supplemental request for another bond premium payment in the amount of $100,000, stating that Terex had received a new invoice for an installment payment "[s]ince filing the Motion."  (A115-116).

On November 27, 2013, the district court granted the motion seeking reimbursement of the $400,000 premium, and entered judgment on December 5, 2013.  (A13-A19, A3).  On December 9, 2013, Metso filed a Notice of Appeal of the district court Order and Judgment.  (A130-A131).

On December 19, 2013, Terex requested that the district court amend the December 5, 2013, Judgment so as to increase the award to $500,000 in light of the additional $100,000 payment made by Terex.  (A132-A133).  On January 29, 2014, the district court denied the motion pursuant to Rule 59(e), Fed.R.Civ.P., as

---

[1]     Although the motions at issue on this appeal were filed by defendant Powerscreen Int'l Distribution Ltd., the motions sought reimbursement to defendant Terex, which was the party liable on the bond and is the only defendant participating in the appeal.  Accordingly, to avoid confusion, Metso refers to "Terex" as the movant in the district court.

untimely, but granted it pursuant to Rule 60(a), Fed.R.Civ.P. (A4-A12). (Decision of District Court reported at 297 F.R.D. 213). An Amended Judgment issued on January 31, 2014. (A1-A2). On February 3, 2014, Metso filed an Amended Notice of Appeal. (A140-A142).

## STATEMENT OF THE FACTS

Shortly after defendants filed their Notices of Appeal of the underlying patent infringement judgment, the district court held a hearing concerning supplemental damages and interest. In briefing prior to this hearing, Metso argued that defendants' ultimate liability on the judgment of patent infringement, including interest, could be as much as $50 million (A26-A28, at A28), while defendants admitted that their liability could be as high as $44 million. (A20-A25 at A24).

At the hearing, held on June 22, 2012, the district court expressed surprise that defendants had not posted a bond in connection with the Notices of Appeal (A29-A43, at A35).[2] Defendants agreed to post a bond for $50 million to cover defendants' total damages and interest liability, but defendants insisted that if defendants' total liability ended up being $44 million, as defendants had alleged, Metso would have to pay the bond premium cost for the difference. (A35-A36).

---

[2] Although the parties and the district court informally referred to the bond at issue as an "appeal bond" (*i.e.*, one that covers the costs of an appeal and is governed by Rule 7, Fed.R.App.P.), it was actually a supersedeas bond governed by Rule 8, Fed.R.App.P. and Rule 62(d), Fed.R.Civ.P. (*i.e.*, a bond obtained to stay the enforcement of a judgment while an appeal is pending). (A16-A17).

The district court specifically stated that it was not concerned about, and was not ruling on, the liability for the <u>total</u> cost of the $50 million bond:

| | |
|---|---|
| DISTRICT COURT: | I don't understand why a bond is not posted. I will find out. Why isn't a bond posted? |
| DEFENDANTS: | Your Honor, one wasn't required. We are happy to post a bond. Give us three weeks. We will post it for the $50 million, as proposed, with a caveat that if the final judgment isn't $50 million, we would like Metso to pay a pro rata share of the cost of the bond. If that is okay with the court. |
| DISTRICT COURT: | I'm sorry. You will post a bond for the whole $50 million and what? |
| DEFENDANTS: | If their judgment doesn't total $50 million at the end of the day, because we are operating on their number, we don't think they get the $50 million. |
| DISTRICT COURT: | If not $50 million, they will pay back the amount of the bond. |
| DEFENDANTS: | The bond. |
| DISTRICT COURT: | That is fair enough. What do you say about that? |
| METSO: | Well, first of all, they have looked at all our filing and they have admitted at least $44 million. So we are talking about a difference of $6 million. And I think that it is premature to make any sort of ruling on that or ask us to agree to anything. After there is an appeal, then they can ask for costs based upon whatever theories they have. Whatever the law is. I haven't looked at what the law is. |
| DISTRICT COURT: | I am surprised. I guess I'm not understanding. Here they have offered to put up a bond for the entire amount that you say is due, and all they say is that if it is ultimately determined that that is not the amount you should collect, you should pay them back for part of the bond, and you say no? |
| METSO: | You are talking about the cost of the bond? |
| DISTRICT COURT: | Yes. |
| METSO: | The difference. I haven't looked at the law but my guess is that we would be liable for that under -- |
| DISTRICT COURT: | I'm not interested in whether you are liable. |

7

METSO:              So I think yes.  Yes.

                              *   *   *

DISTRICT COURT:     Bond for $50 million by July 13.  You will send me
                    a letter saying you are you are putting up the bond.
                    And the only condition is, if it is ultimately decided
                    by the federal circuit or by this court that it is not the
                    full $50 million, that percentage-wise on the cost of
                    the bond they will reimburse you.

(A35-A37).  The district court thus ruled that defendants should post a bond for

$50 million, thereby avoiding defendants' immediate liability to Metso for

payment of the previously entered $31.6 million judgment, but that "if it is

ultimately decided by the federal circuit or by this court that it is not the full $50

million, that percentage-wise on the cost of the bond they will reimburse you."

(A37).  The district court also stayed the supplemental damages and interest

assessment proceedings during the pendency of defendants' appeals.  (A44-A45, at

A45).

On July 12, 2012, defendants filed proof of their obtaining the bond; in

relevant part, the terms of the bond stated that "if the ultimate award granted is less

than $50,000,000, Plaintiff will reimburse Defendants for the cost of the bond

above the amount finally awarded."  (A46-A53, at A48).  On August 3, 2012, the

district court issued an Order approving the bond terms.  (A72-A78).  The Order

did not specify the amount of the bond premium that would be awarded should the

damages and interest end up being less than $50 million, because defendants did

8

not disclose the cost of the bond premium to either the district court or Metso.

On May 14, 2013, this Court reversed the district court's judgment of patent infringement. (A54-A71). In its decision, this Court ruled that "No costs" were awarded. (A71). Despite this determination of the invalidity of the patent, Terex did not immediately ask the district court to release the bond. On August 9, 2013, this Court denied Metso's motion for reconsideration, and issued its Mandate on August 16, 2013. (A81-A101). At no time did Terex file a motion in this Court seeking any of its appellate costs or seeking reconsideration of this Court's ruling that no appellate costs were awarded. Terex failed at any point to apprise this Court of the parties' supposed agreement concerning costs for the bond premium in the event of a complete reversal of the judgment. Again, despite the issuance of the Mandate, Terex did not immediately ask the district court to release the bond.

On September 9, 2013, Terex finally filed a motion in the district court seeking release of the bond. Terex also sought reimbursement from Metso for the cost of the bond. *See* District Court Docket Sheet (DE 734). Prior to filing this motion, Terex had never communicated to the district court or to Metso the cost of the bond or when any periodic payments, if any, were scheduled to be due. Terex argued that Metso had agreed at the June 22, 2012 district court hearing, that, in the event the district court's post-trial judgment was reversed, Metso would reimburse defendants for Metso's *pro rata* share of the premium paid for the entire

$50 million bond. Terex argued that, because its liability was ultimately nothing as a result of the reversal of the judgment, Metso was liable for the bond premium cost for the entire $50 million bond, *i.e.,* $400,000. Terex included a bond premium invoice for $400,000, the payment record, and a copy of the check issued by Terex for the $400,000 payment. (A102-A108). Terex made no mention of any other invoices or payments concerning the bond premium that were owed.

Four days later, however, on September 13, 2013, Terex filed a supplemental request for another bond premium payment (A115-A116), with its counsel stating under oath that "[s]ince filing of the Motion, Terex Corporation received an invoice from the bond surety in the amount of $100,000." (A109-A111, at A110 ¶ 3) (emphasis supplied). The invoice, however, was dated July 22, 2013, months earlier, and although the invoice stated that the $100,000 installment payment was "due upon receipt"; that is, on or about July 22, 2013, payment was due for the period July 6, 2013, through October 6, 2013. (A112-A114, at A112). Clearly, Terex had received a first invoice in June or July 2013, not after September 9, 2013 as stated in the sworn statement submitted with the motion. In addition, just above the remittance form that was to be sent along with the payment check were the typewritten words "This is a Reissued Invoice" (A112) (emphasis supplied). Terex had been delinquent in paying the installment payment for the coverage period beginning on July 6, 2013, apparently because Terex believed that

10

there should be no need to renew its bond after this Court had, on May 14, 2013, invalidated the patent upon which the bond was predicated. Nevertheless, Terex's September 13, 2013 supplemental request raised the reimbursement amount sought to $500,000, to cover the $400,000 annual premium sought in its initial motion, plus this additional $100,000 installment payment. Evasively, Terex did not inform the district court that on the <u>same</u> day it filed the supplemental request, September 13, 2013, it paid the $100,000 installment payment that was the subject of that very request. (A134-A136, at A136).

On September 13, 2013, defendants filed in the district court an Application for Costs, but that Application did not include any of the $500,000 in costs for the bond premiums. (A119-A125). Metso subsequently paid to defendants $81,420.26 in costs that were ultimately assessed by the district court in response to the Application for Costs. (A137).

On September 23, 2013, Metso opposed Powerscreen's motion for reimbursement of the bond premiums, but consented to the immediate release of the bond so as to mitigate further bond premium costs. *See* District Court Docket Sheet (DE 740).

On September 26, 2013, Terex submitted a letter requesting that in view of Metso's position regarding the lack of need to continue the bond, the district court order the immediate release of the bond so that Terex would not have to pay a

11

$100,000 premium payment, which would be due on October 1, 2013. (A126-A127). Although defendants could have made this request shortly after this Court's May 14, 2013 decision invalidating the patent, so as to reduce the bond premiums and mitigate its appellate costs, a request that Metso would certainly not have opposed, defendants failed to do so.

On September 30, 2013, the district court released the bond so that the October 1, 2013 bond premium payment would not have to be paid. (A128-A129), although a $100,000 bond premium for the period July 6, 2013 to October 6, 2013 had already been unnecessarily paid by Terex.

On November 27, 2013, the district court granted Terex's motion seeking reimbursement of the $400,000 bond premium. (A13-A19). The district court, like Metso, was obviously confused as to whether the $100,000 bond premium that was the subject of defendants' September 13, 2013 supplemental request was the same $100,000 bond premium that was the subject of defendants' September 26, 2013 letter requesting an immediate release of the bond. The district court's subsequent January 29, 2014 decision does not admit to any confusion, but nevertheless awarded this additional $100,000 to Terex. (A4-A12).

On December 19, 2013 and again on January 3, 2014, Terex filed a motion seeking to amend the December 5, 2013 Judgment to increase the award to $500,000, to cover the $100,000 additional installment premium payment that

Terex made on September 13, 2013 for the period July 6, 2013 to October 6, 2013.

(A132-A133; A138-A139; District Court Docket Sheet (DE 759, 760)).  Terex

never explained why it did not seek a rescission of the bond immediately after this

Court's May 14, 2013 decision invalidating the patent, why it waited a month after

the Mandate to seek rescission of the bond, or why it could not have sought partial

cancellation of the bond for the period of August 16, 2013 (the date of the

Mandate) until October 6, 2013 (the end of the then-pending bond premium

period).  The payment schedule for the bond premium, as well as the cost of the

bond, was not disclosed by defendants to Metso or to the district court until Terex

filed its motion on September 9, 2013.  And Terex made no effort whatsoever to

mitigate its bond premium damages until after _two_ billing periods had elapsed

following this Court's May 14, 2013 decision invalidating the patent in suit and

mooting any need for the bond.

On January 29, 2014, the district court granted Terex's motion to amend the

Judgment and awarded Terex a total of $500,000 as reimbursement for the entirety

of their costs in obtaining the bond for the full $50 million.  (A4-A12).  The district

court stated that it "need not address" Metso's argument that Terex's delay in

seeking to rescind the bond put responsibility for the additional $100,000 at

Terex's door; rather, the district court concluded that the omission of the $100,000

in the district court's initial decision was a "clerical mistake" correctable under

13

Rule 60(a), Fed.R.Civ.P. (A9). The district court rejected as untimely Terex's alternative motion to amend the judgment pursuant to Rule 59(e), Fed.R.Civ.P. (A9-A10).

## SUMMARY OF THE ARGUMENT

Upon consideration of defendants' appeal to the Federal Circuit, this Court explicitly stated that "no costs" were awarded in connection with the reversal of the judgment. (A71). Terex did not seek reconsideration of the Court's decision, nor did it apply to this Court for costs as authorized by Rule 39, Fed.R.App.P.; instead, it returned to the district court as if the "no costs" ruling did not exist. The district court determined that a purported agreement between the parties obligated Metso to pay Terex's cost in obtaining a supersedeas bond, thereby deviating from this Court's ruling denying appellate costs. By not taking any steps to modify this Court's explicit ruling, Terex waived its entitlement to costs on the appeal. The district court's interpretation of Rule 39(e), Fed.R.App.P., was legally erroneous, and on *de novo* review, must be reversed.

Alternatively, the district court's judgment must be reversed because there was no agreement by Metso to reimburse Terex for the entire cost of the supersedeas bond. Metso's agreement, if there were one, concerned the <u>difference</u> between the amount Terex conceded as potentially owed to Metso ($44 million), and the amount Metso maintained it was owed ($50 million). Because an

agreement to modify the provisions of Rule 39 must be explicit and unambiguous, unlike the purported agreement and bond in this case, any award to Terex for the bond premiums should have been limited to this pro-rated amount. On *de novo* review, the district court's decision should be reversed.

If this Court finds that Terex is entitled to its bond premium costs, the district court's Amended Judgment must be reversed because the district court abused its discretion under Rule 60(a), Fed.R.Civ.P., by deeming the additional $100,000 a clerical or typographical mistake subject to administrative correction. That additional amount – paid by Terex long after this Court's reversal of the underlying infringement judgment – stood in an entirely different category from the initial $400,000 award, and represented a total failure by Terex to mitigate its damages. By amending the judgment under Rule 60(a), Fed.R.Civ.P., the district court impermissibly used this provision to alter the parties' substantive rights and obligations. On the merits, Terex's motion should have been denied because Terex failed to mitigate its damages by not promptly moving to rescind the bond after this Court issued its decision. Because the district court held that Terex's motion was untimely under Rule 59(e), Fed.R.Civ.P., the other basis under which defendants sought relief, the motion seeking the additional $100,000 in bond premium costs should have been denied.

## **ARGUMENT**

### I.    **Standard of Review**

This Court ordinarily reviews procedural matters not unique to patent issues under the law of the regional circuit where appeals from the district court would normally lie; here, the Second Circuit.  *Panduit Corp. v. All States Plastic Mfg. Co., Inc.,* 744 F.2d 1564, 1574-75 (Fed. Cir. 1984), *overruled on other grounds by Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424 (1985).  This Court has deferred to regional circuits on the issue of entitlement to costs.  *Summit Tech., Inc. v. Nidek Co., Ltd.,* 435 F.3d 1371, 1374 (Fed. Cir. 2006).

Under Second Circuit law, the question whether a district court has properly interpreted the Rules of Appellate Procedure is a question of law that the Court reviews *de novo.  L-3 Communications Corp. v. OSI Sys., Inc.,* 607 F.3d 24, 27-28 (2d Cir. 2010); *see also Adsani v. Miller,* 139 F.3d 67, 71 (2d Cir.), *cert. denied,* 119 S.Ct. 176 (1998) ("Ordinarily, we would review the district court's post-judgment order pursuant to [Federal] Rule [of Appellate Procedure] 7 for abuse of discretion. . . . Since, however, this appeal challenges the extent and type of costs allowable under Rule 7, we review de novo to settle a question of law.").

The interpretation of the terms of a bond, "like any other contract, is a matter of law"; thus, the "review is de novo."  *Beatrice Foods Co. v. New England Printing and Lithographic Co.,* 930 F.2d 1572, 1574 (Fed. Cir. 1991).  "The

interpretation of supersedeas bonds is a not a task unique to the patent field"; thus, this Court applies the law of the regional circuit from which the case originated. *Id.* at 1575.

When reviewing non-patent issues raised by Fed.R.Civ.P. 60, such as the motion ruled upon in this case, this Court "appl[ies] the law of the regional circuit." *Fiskars v. Hunt Mfg. Co.,* 279 F.3d 1378, 1381 (Fed. Cir. 2002). In the Second Circuit, a district court's decision on a Rule 60 motion is reviewed for abuse of discretion. *Paddington Partners v. Bouchard,* 34 F. 3d 1132, 1140 (2d Cir. 1994).

## II. The District Court Contravened the Mandate of This Court That No Appellate Costs Were Awarded to Either Party

Upon the conclusion of an appeal, Rule 39, Fed.R.App.P., sets forth the procedure for a party claiming costs to obtain an award of the costs it incurred in connection with the appeal. *Adsani,* 139 F.3d at 74. Whereas Rule 54(d), Fed.R.Civ.P., addresses costs incurred in the district court proceedings, Rule 39, Fed.R.App.P., concerns costs incurred in pursuing an appeal, including copying and printing costs for appellate briefing, the cost of preparing and transmitting the record, the reporter's transcript, premiums paid for a bond pending appeal, and the notice of appeal filing fee. Rule 39(c), (e), Fed.R.App.P.

The prevailing party on a judgment that is reversed shall have its taxable costs "unless the law provides or the court orders otherwise." *L-3 Communications Corp., Inc.,* 607 F.3d at 28 (emphasis supplied) (quoting Rule 39(a), Fed.R.Civ.P.). "Pursuant to . . . [R]ule [39], the Court of Appeals has wide discretion in the taxation of costs." *DLC Mgmt. Corp. v. Town of Hyde Park,* 179 F.3d 63, 64 (2d Cir. 1999); *see Tung Mung Dev. Co., Ltd. v. U.S.,* 354 F.3d 1371, 1381-82 (Fed. Cir. 2004) ("[Rule 39] . . . leaves the awarding of costs to the discretion of the court. . . . No decision of the Supreme Court or of our own court requires that costs be routinely awarded to the prevailing party"); *McDonald v. McCarthy,* 966 F.2d 112, 115 (3d Cir. 1992) ("In ordering that each party bear its own 'costs' this court was clearly and properly exercising its discretion under Rule 39(a)"); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.,* 800 F.2d 1256, 1266 (4th Cir. 1986) ("Under [Rule 39], an appellate court has wide discretion in the taxation of costs. . ."); *Kelley v. Metro. County Bd. of Educ.,* 773 F.2d 677, 681 n. 4 (6th Cir. 1985) ("While Fed.R.App.P. 39(a) sets forth general guidelines for the award of costs on appeal . . . it also allows the appellate tribunal wide discretion in reimbursing a party for its expenses").

In the Second Circuit, although an award of costs to a prevailing party under Rule 39 is "a customary and often routine procedure", the appellate court nonetheless "retains discretion to deny costs when, in the exercise of its discretion,

18

it determines taxation is not appropriate." *Moore v. County of Delaware,* 586 F.3d 219, 220 (2d Cir. 2009). In exercising its discretion, the Second Circuit has stated that it may be appropriate to deny costs "where a losing party can demonstrate misconduct by a prevailing party, the public importance of the case, the difficulty of the issues presented, or its own limited financial resources." *Id.* at 221; *see Tung Mung Dev. Co., Ltd.,* 354 F.3d at 1382 (appellate court's discretion under Rule 39 "extends to denying costs as well").

Here, the district court's ruling awarding Terex the costs it incurred in obtaining the bond contravened the determination of this Court that one or more factors justified a modification of the default rule that a prevailing party be awarded its appellate costs. The district court opinion stated that there was an absence of authority on the issue of determining liability for a supersedeas bond prior to resolution of the appeal. (A18). But that statement of the timing is not accurate – Metso's liability for the supersedeas bond was not determined until *after* the appeal had been decided, and *after* this Court had denied both parties their costs, as discussed below.

Rule 39, Fed.R.App.P., is divided into five sections, providing (a) against whom costs will be taxed; (b) the taxability of the United States; (c) the maximum rate for costs of briefs, appendices and copies of records; (d) the procedure by which a party desiring such costs may claim them; and (e) that costs incurred for,

*inter alia,* "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal," will be taxed in the district court. *Adsani,* 139 F.3d at 74; Rule 39(a)-(e), Fed.R.App.P. Payment of appellate bond premiums is not enumerated as one of the taxable costs in 28 U.S.C. § 1920 ("Taxation of Costs"), and thus, Rule 39(e), Fed.R.App.P., is the basis for a court's authority to award such a cost. *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.,* 481 F.3d 442, 448 (7th Cir. 2007) (internal citation omitted) ("Where the Federal Rules conflict with a 'procedure provided in an earlier act of Congress,' the Federal Rules control").

The cost for premiums for a supersedeas bond is an <u>appellate</u> court cost, not a <u>district</u> court cost. Rule 39(e) states that the appellate-enumerated costs, including the premiums for supersedeas bonds, "are taxable in the district court for the benefit of the party entitled to costs under this rule." Thus, a party applies for certain appeal costs in the district court, *where costs have been allowed by the appellate court,* or at least not disallowed. *Adsani,* 139 F.3d at 74 (Rule 39 addresses how costs "should be taxed, procedurally speaking"); Advisory Committee's Note to Rule 39(e), Fed.R.App.P. (costs set forth in Rule 39(e) "are costs of the appeal" and "are made taxable in the district court for general convenience."); *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.,* 497 F.3d 805, 808 (8th Cir. 2007) (Rule 39(e) limits the costs taxable in the district court to those a party is "entitled to . . . under this rule"); *Record Club of America,*

*Inc. v. United Artists Records, Inc.,* 731 F. Supp. 602, 603 (S.D.N.Y. 1990) ("When costs are awarded on appeal, a portion of the costs is taxed in the circuit court and a portion is taxed in the district court").

In this case, this Court denied Terex its appeal costs. Thus, with respect to Rule 39(a) and the present litigation, "the court order[ed] otherwise". Costs under Rule 39(e) are only taxable "for the benefit of the party entitled to costs under this rule" and, because Terex was not entitled to costs under this rule, the district court was without authority to award them. *See Invention Submission Corp. v. Dudas,* 413 F.3d 411, 414 (4th Cir. 2005) ("In general, once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution"); *Meyers v. Baltimore County, Md.,* Civ. Action No. ELH-10-549, 2014 WL 1348007, *3 (D.Md. April 3, 2014) (although defendant prevailed at trial after remand, "defendant has not cited any authority to permit the district court to override the costs that the Fourth Circuit previously and unconditionally awarded to plaintiff").

Because this Court expressly denied costs associated with defendants' appeal, the district court was without authority to impose the cost of the supersedeas bond on Metso. By ordering that Metso pay the costs of the supersedeas bond, the district court contravened this Court's ruling. That determination exceeded the district court's authority and was an incorrect

interpretation of Rule 39(e), Fed.R.App.P. The district court's decision must be reversed, and this Court's Order denying costs must be enforced.

## A.  Terex Waived its Entitlement to Appellate Costs

If Terex believed that there *had* been an agreement between it and Metso, the proper course of action in response to this Court's "no costs" order was to seek reconsideration of the Court's decision so as to allow enforcement of the purported agreement with Metso. By failing to seek reconsideration by this Court and returning to the district court and seeking enforcement there of the alleged agreement, Terex simply ignored this Court's order that no costs should be awarded.

Parties certainly have the option to stipulate to costs incurred in litigation (and, indeed, are encouraged by this Court's Practice Notes to Federal Circuit Rule 39 to do so with respect to costs for briefs and appendices). *See In re Ricoh Co. Ltd. Patent Litigation,* 661 F.3d 1361, 1367 (Fed. Cir. 2011) (enforcing agreement of parties to allocate costs taxable under 28 U.S.C. § 1920). But the purported agreement in this case did not authorize Terex to do an end run around the plain language of this Court's order. The public record contains the directive of this Court that no appellate costs are to be awarded, but the district court's order *awarding* Terex its appellate costs is blatantly contrary to that Order. That

22

inconsistency is harmful to the administration of justice and contrary to Rule 39, Fed.R.App.P.

Because Terex did not seek reconsideration of this Court's "no costs" determination, this Court's May 14, 2013 decision governs the award of appellate costs in this case. Terex is not entitled to reimbursement of the costs incurred in connection with the supersedeas bond, and the district court's rulings to the contrary must be reversed.

## B. The District Court Incorrectly Faulted Metso for Not Appealing the Bond Order at the Time it Was Entered

Nor was the district court correct in faulting Metso for not appealing the bond order at the time the bond was entered. The district court Orders regarding the bond (A44-A45, A72-A78) were not completely final until after defendants' appeal was decided adversely to Metso and an amount certain, $500,000, was awarded in bond costs. *See, e.g., MacEwen Petroleum, Inc. v. Tarbell,* 136 F.3d 263, 264-65 (2d Cir. 1998) (holding that requirement of bond, imposed by district court as condition for vacatur of default judgment, not final or appealable; appeal dismissed).

Although Metso could perhaps have filed an interlocutory appeal under 28 U.S.C. § 1292(c)(2), that would have led to piecemeal consideration of yet another aspect of this litigation. An interlocutory appeal in specified situations "although

permitted, is not obligatory." *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 493 (3rd Cir.1997) ("an interlocutory appeal from a denial of summary judgment on immunity grounds, although permitted, is not obligatory"); *Tincher v. Piasecki*, 520 F.2d 851, 854 n.3 (7th Cir. 1975) ( "Although the preliminary injunction was appealable as of right . . . the defendants' failure to appeal did not waive their right to appeal from the final order. An interlocutory appeal is permissive rather than mandatory"); *Scarrella v. Midwest Fed. Sav. & Loan*, 536 F.2d 1207, 1209 (8th Cir.1976) ("A party is not required to take an interlocutory appeal authorized by statute."); *Bingham Pump Co. v. Edwards, Inc.,* 118 F.2d 338, 339 (9th Cir. 1941) ("appellant was not required to [immediately] appeal from the interlocutory decree" holding patent valid and infringed); *see generally* 16 Charles A. Wright et. al., Fed. Prac. & Proc. Juris. § 3921 n. 27 (2d ed.). In August 2012, when the district court entered the bond order, an accounting of damages, attorneys' fees and costs was still pending in the district court, and the more sensible course of action was for this Court to review all cost issues at the same time, after the accounting had been completed and the bond costs imposed.

Thus, this appeal is proper and the district court Orders awarding Terex the bond premiums are properly subject to review by this Court.

### III. The Parties Reached no Agreement Concerning Payment of Bond Costs in the Event of a Complete Reversal of the Infringement Judgment

The district court held that Terex was entitled to its bond costs because Metso purportedly agreed that it would pay such costs if the Judgment were reversed. The district court was wrong.

Rule 8(a)(1)(B), Fed.R.App.P., states that a motion for approval of a supersedeas bond should ordinarily be made "first in the district court." Rule 62(d), Fed.R.Civ.P., sets forth the procedure for posting a bond to obtain a stay of a monetary judgment pending appeal: "If an appeal is taken, the appellant may obtain a stay by supersedeas bond, . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal." The stay takes effect upon the court's approval of the bond. *Id.* In interpreting the terms of a bond, "the parties' intent is controlling." *See Beatrice Foods Co.,* 930 F.2d at 1574.

Even if Metso's statements at the July 22, 2012 hearing could somehow nullify the subsequent Order of this Court and Rule 39, Fed.R.App.P., the district court misconstrued the commitment Metso made, and the Order and bond that the district court subsequently entered. The discussion cited by the district court concerning Metso's alleged "agreement" to pay the cost of the bond did not concern a potential complete reversal of the judgment. Rather, it related to whether Metso would pay the difference in cost between the $50 million bond that

defendants agreed to obtain, and the amount of the eventual damages judgment, should that amount turn out to be closer to the $44 million liability that defendants acknowledged.

During the district court hearing, the district court asked whether Metso would reimburse defendants "for part of the bond" in the event that the ultimate judgment against defendants turned out to be less than $50 million. Metso clarified that it was only agreeing to pay the bond premium on the $6 million difference between the $50 million liability that Metso believed existed and the $44 million that defendants believed existed. (A36-A37).

The district court then summarized that the only condition to the bond was "if it is ultimately decided by the federal circuit or by this court that it is not the full $50 million, that percentage-wise on the cost of the bond they will reimburse you." (A37). The district court subsequently entered an Order that defendants would obtain a bond for $50 million and that "[i]f the Plaintiff does not eventually recover this full amount, it shall be responsible for its pro rata share of the cost of the bond." (A45). This language, framed in terms of Metso "not recovering the full amount" of its judgment, plainly contemplated a recovery by Metso of some amount.

There was no discussion as to what would happen if the infringement judgment were completely reversed, only if defendants' damages were less than

$50 million, as defendants alleged. *See* Transcript of June 22, 2012 Hearing ("if it is ultimately decided by the federal circuit or by this court that it is not the full $50 million") (A37); District Court Order ("[i]f the Plaintiff does not eventually recover this full amount") (A45); terms of bond ("if the ultimate award granted is less than $50,000,000") (A73). There was certainly no agreement by Metso to pay for the cost of the entire bond premium if the infringement judgment were completely reversed.

For an agreement concerning costs to be valid and enforceable, it must be clear and unequivocal. *Saunders v. Washington Metropolitan Area Transit Authority*, 505 F.2d 331 (D.C. Cir. 1974). *Saunders* is instructive. There, the parties entered a written stipulation providing that the parties would pay their proportionate share for printing the joint appendix on appeal. When the prevailing party sought under Rule 39, Fed.R.App.P., to be reimbursed for the outlay of printing costs, the losing party argued that the parties had reached a stipulation altering the provisions of Rule 39. The appellate court disagreed, ruling that the parties' agreement – which simply mirrored the cost-sharing provisions of Rule 30(b), Fed.R.Civ.P. -- did not alter the ultimate cost allocation set forth in Rule 39. Although noting that parties are free to contract in regard to taxable costs, subject to the limitations of public policy, the Court held that any such agreement must be plain and convincing, explicitly formulated, and free from ambiguities:

> Parties who seek an ultimate adjustment of taxable costs different from the scheme of Rule 39(a) should formulate their agreements explicitly; close attention to the matter will avoid the ambiguity, and the resulting controversy which we have encountered in this case. In sum, we cannot, on the basis of a stipulation of dubious import, deprive a litigant of an entitlement which Rule 39(a) confers upon him. Only when the litigant has unequivocally waived the entitlement are we justified in excluding it from his bill of costs. We cannot say that there was such a waiver here.

*Id.* at 334; *see also Lerman v. Flynt Distributing Co., Inc.*, 789 F.2d 164 (2d Cir. 1986) (denying reimbursement for interest charges in connection with supersedeas bond where opposing party did not clearly consent to expense); *L-3 Communications Corp.,* 607 F.3d at 30 (where appellate court "reviewed extensive briefing on the issue of costs on appeal, and L-3's brief specifically informed the Court that, upon this order, it would move in the district court for costs taxable under Rule 39(e)", district court did not abuse discretion in awarding costs of supersedeas bond); *In re Ricoh Co., Ltd.,* 661 F.3d at 1366-67 (where parties entered 14-page agreement to divide costs associated with use of electronic database service, and agreement contained no indication that it was other than final settlement of costs, district court erred in awarding costs to prevailing party).

General contract principles compel the conclusion that cost-sharing agreements under Rule 39 must be free from ambiguity. After all, there must be a meeting of the minds necessary to create a binding agreement, and there was no such meeting of the minds here. Having never been given any information by

Terex as to how much it was paying for the bond, Metso would not even have

known what obligation it might have been undertaking in an agreement to pay the

full cost of the bond premiums if the infringement judgment were reversed. As the

Second Circuit has stated:

> If the manifestations of intention of either party are uncertain or
> ambiguous, and he has no reason to know that they may bear a
> different meaning to the other party from that which he himself
> attaches to them, his manifestations are operative in the formation of a
> contract only in the event that the other party attaches to them the
> same meaning.

*Flower City Painting Contractors, Inc. v. Gumina Const. Co.,* 591 F.2d 162, 166

(2d Cir. 1979) (quoting Restatement (First) of Contracts § 71(a)).

Here, the terms of the bond and colloquy underlying it are ambiguous, and

do not support the district court's conclusion that Metso should have the

substantial obligation of paying $500,000 in bond costs. Moreover, in *Saunders,*

505 F.2d at 333, the prevailing party relied upon the default provision of Rule

39(a)(3), Fed.R.App.P., directing that "if a judgment is reversed, costs shall be

taxed against the appellee" unless otherwise ordered; here, there is an express court

order directing that "no costs" should be awarded. Likewise, *In re Ricoh Co., Ltd.,*

661 F.3d 1361, in which this Court enforced a cost-sharing agreement between the

parties, did not involve an explicit court order that "no costs" would be awarded to

either party.

The district court wrongly concluded that the bond was "solely for Metso's benefit." (A19). The supersedeas bond was intended to cover the risk that defendant Powerscreen, a non-U.S. corporation with assets less than a possible $50 million judgment, would not be able to satisfy the judgment in the event that Terex, a joint infringer, was successful in its argument on appeal that Terex was not an alter-ego of Powerscreen. (This Court ultimately did not address this liability issue.) (A33-A34). For their part, the defendants did not have to immediately pay the $31.6 million judgment to Metso, or any additional amount to be assessed as supplemental damages and interest in the district court's supplemental damages proceedings, which were stayed only because defendants posted the bond.

The district court's holding that Metso agreed to pay the full cost of the bond is without merit, given the ambiguous premise on which it is based. In the event the Court concludes that there was an agreement, Metso's obligation should be limited to the cost for obtaining a bond to cover $6 million (the difference between the $44 million and $50 million amounts), *i.e.,* $48,000.[3]

## IV. The District Court Abused its Discretion In Modifying the Judgment to Add the $100,000 Installment Payment Subsequently Paid by Terex

Even if this Court concludes that the "no costs" order should be ignored and

---

[3]      $6,000,000/$50,000,000 x $400,000 = $48,000.

Terex is entitled to reimbursement of its bond costs, such reimbursement should be limited to $400,000.

In the January 29, 2014, Order, the district court amended the judgment awarding Terex $400,000 for the bond premium (which had been paid before the Federal Circuit's decision on appeal), and concluded that it had made a "clerical mistake" in not including the $100,000 installment payment made by Terex *after* the appeal to this Court had been decided. This change, however, altered the substantive rights of the parties and was not a clerical mistake or typographical error. The district court fit a square peg in a round hole in awarding Terex relief under Rule 60(a), and the decision should be reversed. Moreover, on the merits, the district court abused its discretion because the agreement did not contemplate that Metso would be liable in perpetuity for bond premiums and because Terex failed to mitigate its damages in not promptly seeking the release of the bond immediately after the appeal had been decided.

Because the district court properly held that Terex's alternative motion to amend the judgment under Rule 59(e), Fed.R.Civ.P. was untimely, Terex's motion for relief should have been denied.

**A.    The District Court's Award of $400,000 Instead of $500,000 Was Not a Clerical or Typographical Mistake**

Rule 60(a), Fed.R.Civ.P., provides in pertinent part that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time upon its own initiative or on the motion of any party and after such notice, if any, as the court orders." Rule 60(a) "does not permit a court to amend every inaccuracy reflected in the text of an opinion." *Williams v. Breslin,* No. 03 Civ. 1848 RWS, 2004 WL 2368011, \*3 (S.D.N.Y. Oct. 20, 2004). The purpose of Rule 60(a) "is to address clerical mistakes that appear on the face of a court's opinion or otherwise affect the accurate intentions of the court." *Matura v. U.S.,* 189 F.R.D. 86, 90 (S.D.N.Y. 1999); *see Polanco v. Allan*, No. 93-CV-1498, 1996 WL 377074, \*1 (N.D.N.Y. July 5, 1996). Rule 60(a) "is not meant to provide a way for parties to relitigate matters already decided, to charge errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized." *Employers Mutual Casualty Co. v. Key Pharmaceuticals, Inc.*, 886 F.Supp. 360, 363 (S.D.N.Y. 1995), *aff'd*, 75 F.3d 815 (2d Cir. 1996). An error that "accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a)." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1140 (2d Cir. 1994).

Rule 60(a) is inapplicable here. The November 27, 2013 initial Order and Judgment failing to award the additional $100,000 was not a "clerical mistake"

because the district court had made no determination as to whether Terex was entitled to reimbursement of amounts paid on the supersedeas bond *after* this Court's decision on appeal. The district court's initial Order did not recognize a right by Terex to amounts incurred after the appeal had been decided, and the terms of the bond do not support such an interpretation, stating that "if the ultimate award granted is less than $50,000,000, Plaintiff will reimburse Defendants for the cost of the bond above the amount finally awarded." (A73). At the time of the decision on appeal, the "cost of the bond" was $400,000, not $500,000.

The Second Circuit has explained that "[t]he heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Dudley ex rel. Estate of Patton v. Penn-America Ins. Co*., 313 F.3d 662, 675 (2d Cir. 2002) (internal citation omitted). Here, the district court never decided the substantive issue of whether Terex was entitled to monies incurred *after* the date that the appeal was decided, or how long Metso's liability would continue. This is a substantive matter, not a clerical or administrative one. *See, e.g., Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d 39, 40-41 (2d Cir. 1979) (clerk's failure to include pre-judgment interest to which prevailing party was statutorily entitled was not subject to correction under Rule 60(a)), Fed.R.Civ.P.).

33

To the extent that the district court blamed Metso for not raising this argument in its initial opposition to Terex's motion seeking reimbursement (A11), that was because Terex misrepresented the facts to the district court and obfuscated when, and under what circumstances, it had paid the $100,000 installment.  On the one hand, Terex claimed that "a $100,000 premium payment was authorized by Terex Corp. for the Appeal Bond"; on the other, Terex's counsel stated that "[s]ince filing of the Motion", Terex had received a new invoice for $100,000. (A115, A110).  In fact, Terex had received the $100,000 invoice months before the filing of the motion in direct contradiction to Terex's sworn statement. (A112-A114, at A112).  Indeed, it was not a clerical mistake or typographical error that caused the district court to overlook the $100,000 installment payment in its initial ruling; it was Terex's obfuscatory statements.  In any event, Metso's argument was properly raised for consideration in opposition to Terex's motion for reconsideration.  Terex made the claim that the error was simply a clerical one, and Metso was entitled to argue why it was not.

### B.    The $100,000 Payment Was Made After the Appeal Had Been Decided, and Terex Had Failed to Seek Rescission of the Bond

On the merits, the district court abused its discretion in awarding Terex the $100,000 installment payment made after this Court decided the appeal.  The terms of the bond state that "if the ultimate award granted is less than $50,000,000,

Plaintiff will reimburse Defendants for the cost of the bond above the amount finally awarded." (A73). That language does not contemplate that Metso would be liable in perpetuity for bond payments that Terex might incur; it speaks about the "ultimate award granted", which must be deemed to have issued as of the date of this Court's decision on May 14, 2013.

Furthermore, Terex delayed for four months (from May 14, 2013, the date of this Court's decision, through July 6, 2013, the beginning of the coverage period, through August 9, 2013, when this Court denied Metso's motion for reconsideration, through August 16, 2013, when this Court issued its Mandate, through September 9, 2013, when Terex filed its motion, and finally, until September 13, 2013, when Terex finally informed the district court in its supplemental filing of Terex's belated installment payment). Terex failed to timely seek rescission of the bond premium to avoid another installment payment, which Terex paid without apprising the district court or Metso. In view of this Court's decision and decision on reconsideration, Metso and the district court would certainly have agreed to rescind the bond to avoid the needless expense of another $100,000. The district court imposed upon Metso responsibility for the September 13, 2013 installment payment, which Terex could easily have avoided had it sought to release the bond immediately after this Court's May 14, 2013 decision on the appeal, or after this Court's decision on August 9, 2013 on

reconsideration, or even after the this Court's Mandate on August 16, 2013.  Terex made no effort to mitigate its damages, as was its affirmative obligation.  *See Bose Corp. v. Consumers Union of U.S., Inc.*, 806 F.2d 304, 305 (1st Cir. 1986), *cert. denied,* 107 S.Ct. 1894 (1987).

As for the suspicious circumstances surrounding the payment of the $100,000, the invoice to Terex for this installment payment was dated July 22, 2013. (A112).  It covered the period July 6, 2013 through October 6, 2013, and stated that it was a "Reissued Invoice" that was "Due Upon Receipt."  *Id*.  Terex apparently paid the premium late, <u>after</u> Terex's motion had been filed, because it had not yet obtained a district court order terminating the bond (because of its own delay in seeking such an order), and figured that Terex would be reimbursed by Metso anyway.

Moreover, it is of no relevance that this Court did not issue the Mandate until August 16, 2013.  <u>Terex did not pay the invoice until September 13, 2013</u>, well after the August 16, 2013, Mandate.  Terex's payment date is also well after the August 9, 2013 Order denying Metso's petition for rehearing (A80), so the fact that the $100,000 quarterly installment covers the time period during which Metso's request for rehearing was pending is of no significance.  In view of the status of the case in June/July 2013 when the initial invoice was received (*i.e.,* the May 14 decision had already issued) and at the time the reminder invoice was

received (*i.e.,* the Mandate had already issued), and Terex's position that Metso was liable for the entire cost of the bond, Terex, at the very minimum, should have brought the pending invoice to Metso's attention long before it did.

Although the district court concluded that Metso was liable for the cost of the bond, the extra belated $100,000 installment payment was incurred as the result of Terex's oversight and negligence in waiting *four months* to take any steps to release the bond, and then Terex's making the installment payment while a motion to rescind the bond was pending.

\*    \*    \*

For all of these reasons – both legal and equitable, the $100,000 payment was in an entirely different category than the $400,000 that was the subject of the district court's November 27, 2013 Order.  The district court's Order modifying the Judgment to include this award altered the parties' substantive rights.

The district court concluded that Terex's alternative motion to amend the Judgment pursuant to Rule 59(e), Fed.R.Civ.P., was untimely, a ruling that Terex has not appealed.  Having so held, the district court should have denied the request for relief under Rule 60(a), and not retroactively have concluded that the omission was a clerical mistake.  The district court abused its discretion, and this Court should reverse the Order and Amended Judgment.  Because Rule 59(e), Fed.R.Civ.P., is unavailable, the district court should be directed to enter an Order

denying Terex's motion to amend, thereby denying reimbursement for the additional $100,000 bond premium cost.

## CONCLUSION

For the foregoing reasons, this Court should enforce its prior decision that no appellate costs were to be awarded to either party, and should reverse the Judgments awarding Terex $500,000 in bond premium costs. If the Court concludes that there were an agreement between the parties, Metso should have to pay no more than $48,000 (the cost for a $6 million dollar bond). Metso should not have to pay the additional $100,000 premium payment because Terex failed to mitigate its damages by not promptly seeking to rescind the bond and not seeking relief from the imminently due installment payment immediately after the appeal was decided. Metso should not have to pay for Terex's mistakes.

May 12, 2014                                  Respectfully submitted,

                                             /s/ Michael C. Stuart
                                             Michael C. Stuart
                                             Lisa A. Ferrari
                                             COZEN O'CONNOR
                                             277 Park Avenue
                                             New York, New York 10172
                                             Tel: 212-883-4900
                                             Fax: 212-656-1692

                                             Attorneys for Plaintiff-Appellant
                                             METSO MINERALS, INC.

#18338593

# ADDENDUM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

METSO MINERALS, INC.,

                       Plaintiff,

            - against -

POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as TEREX
GB LIMITED, TEREX CORPORATION,
POWERSCREEN NEW YORK INC. and
EMERALD EQUIPMENT SYSTEMS INC.,

                       Defendants.

-----------------------------------------------------------------X

**AMENDED JUDGMENT**
CV-06-1446 (ADS)(ETB)

       An Order of Honorable Arthur D. Spatt, United States District Judge, having been filed on January 29, 2014, granting in part and denying in part Powerscreen's motion to amend or correct the December 5, 2013 judgment granting Powerscreen's motion for reimbursement of the bond premium in the amount of $400,000, denying the motion as untimely to the extent Powerscreen seeks relief under Fed. R. Civ. P. 59(e), granting the motion to the extent Powerscreen seeks relief under Fed. R. Civ. P. 60(a), and directing the Clerk of Court to enter judgment in favor of Terex Corporation in an additional amount of $100,000, for a total of $500,000, it is

       **ORDERED AND ADJUDGED** that Powerscreen's motion to amend or correct the December 5, 2013 judgment granting Powerscreen's motion for reimbursement of the bond premium in the amount of $400,000 is granted in part and denied in part; that the motion is denied as untimely to the extent Powerscreen seeks relief under Fed. R. Civ. P. 59(e); that the

motion is granted to the extent Powerscreen seeks relief under Fed. R. Civ. P. 60(a); and that

judgment is hereby entered in favor of Terex Corporation and against Plaintiff Metso Minerals,

Inc. in the amount of $500,000.

Dated:  Central Islip, New York
            January 31, 2014

                                        DOUGLAS C. PALMER
                                        CLERK OF THE COURT

                              By:    /s/ Catherine Vukovich
                                        Deputy Clerk

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
METSO MINERALS, INC.,

                            Plaintiff,

              - against -

POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as TEREX
GB LIMITED, TEREX CORPORATION,
POWERSCREEN NEW YORK INC. and
EMERALD EQUIPMENT SYSTEMS INC.,

                          Defendants.
------------------------------------------------------------------X

**JUDGMENT**
CV-06-1446 (ADS)(ETB)

**FILED**
**CLERK**

12/5/2013 4:02 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

      A Short Order of Honorable Arthur D. Spatt, United States District Judge, having been

filed on November 27, 2013, granting Powerscreen's motion for reimbursement of the bond

premium, and directing the Clerk of Court to enter judgment in favor of Terex Corporation and

against Plaintiff Metso Minerals, Inc. in the amount of $400,000, it is

      **ORDERED AND ADJUDGED** that Powerscreen's motion for reimbursement of the

bond premium is granted; and that judgment is hereby entered in favor of Terex Corporation and

against Plaintiff Metso Minerals, Inc. in the amount of $400,000.

Dated:  Central Islip, New York
       December 5, 2013

                              DOUGLAS C. PALMER
                              CLERK OF THE COURT

                    By:    /s/ Catherine Vukovich
                            Deputy Clerk

A3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
METSO MINERALS, INC.,

               Plaintiff,

               -against-

POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as
TEREX GB LIMITED, TEREX
CORPORATION, POWERSCREEN NEW
YORK, INC. and EMERALD EQUIPMENT
SYSTEMS, INC.,

               Defendants.
--------------------------------------------------------X

**ORDER**

06-cv-1446 (ADS)(ETB)

**APPEARANCES:**

**Cozen O'Connor**
*Attorneys for the Plaintiff*
277 Park Avenue
New York, NY 10172
      By:    Michael C. Stuart, Esq.
             Marilyn Neiman, Esq.
             Lisa Ferrari, Esq., Of Counsel

**Lathrop & Gage LLP**
*Attorneys for the Defendants*
950 17th Street, Suite 2400
Denver, CO 80202
      By:    Jon R. Trembath, Esq., Of Counsel


**SPATT, District Judge.**

      This matter was tried before a jury from October 18 to December 6, 2010. On March 3,

2011, judgment was entered in favor of the Plaintiff Metso Minerals Inc. ("Metso"). Following

certain post-trial proceedings, on August 18, 2011, the Defendants Powerscreen International

Distribution Limited, now known as Terex GB limited, Terex Corporation ("Terex"),

Powerscreen New York, Inc., and Emerald Equipment Systems, Inc. (collectively "Powerscreen") appealed to the United States Court of Appeals for the Federal Circuit from the Court's orders relating to a motion by Metso for injunctive relief.

On January 6, 2012, Powerscreen appealed to the Federal Circuit from the Court's judgment based on the jury verdict, and the orders regarding pre- and post-trial motions, and other decisions and rulings affecting the questions of the validity and infringement of U.S. Patent No. 5,577,618 ("the '618 patent").

On June 22, 2012, this Court held a hearing regarding whether to stay all post-trial proceedings as well as regarding the propriety and amount of a bond on appeal. Regarding a bond, the following colloquy took place:

> THE COURT: I don't understand why a bond is not posted. I will find out. Why isn't a bond posted?
>
> MR. TREMBATH: Your Honor, one wasn't required. We are happy to post a bond. Give us three weeks. We will post it for the $50 million, as proposed, with a caveat that if the final judgment isn't $50 million, we would like Metso to pay a pro rata share of the cost of the bond. If that is okay with the court.
>
> THE COURT: I'm sorry. You will post a bond for the whole $50 million and what?
>
> MR. TREMBATH: If their judgment doesn't total $50 million at the end of the day, because we are operating on their number, we don't think they get the $50 million.
>
> THE COURT: If not $50 million, they will pay back the amount of the bond.
>
> MR. TREMBATH: The bond.
>
> THE COURT: That is fair enough. What do you say about that?
>
> MR. STUART: Well, first of all, they have looked at all our filing and they have admitted at least $44 million. So we are talking about a difference of $6 million. And I think that it is premature to make any sort of ruling on that or ask us to agree to anything. After there is an appeal, then they can ask for costs based upon

2

A5

whatever theories they have. Whatever the law is. I haven't looked at what the law is.

THE COURT: I am surprised. I guess I'm not understanding. Here they have offered to put up a bond for the entire amount that you say is due, and all they say is that if it is ultimately determined that that is not the amount you should collect, you should pay them back for part of the bond, and you say no?

MR. STUART: You are talking about the cost of the bond?

THE COURT: Yes.

MR. STUART: The difference. I haven't looked at the law but my guess is that we would be liable for that under --

THE COURT: I'm not interested in whether you are liable.

MR. STUART: So I think yes. Yes.

THE COURT: They have made a very good suggestion.

MR. STUART: Yes. We will agree to that.

. . .

THE COURT: Bond for $50 million by July 13. You will send me a letter saying you are [] putting up the bond. And the only condition is, if it is ultimately decided by the federal circuit or by this court that it is not the full $50 million, that percentage-wise on the cost of the bond they will reimburse you.

(Trembath Decl., ¶ 4 & Ex. A, at 7-9.)

On June 25, 2012, the Court issued an order which provided, in pertinent

part:

> [A]s stated on the record on June 22, 2012, the Defendants shall file an appeal
> bond in the amount of $50 million by July 16, 2012. If the Plaintiff does not
> eventually recover this full amount, it shall be responsible for its pro rata share of
> the cost of the bond.

On July 12, 2012, Powerscreen filed the bond. On August 3, 2012, the Court entered the

bond as an order:

3

Plaintiff has agreed that a bond in the amount of $50,000,000 will adequately
guarantee Plaintiff of full payment and that if the ultimate award granted is less
tha[n] $50,000,000, Plaintiff will reimburse Defendants for the cost of the bond
above the amount finally awarded.

Metso never appealed nor challenged the Court's orders regarding the bond.

On May 14, 2013, the Federal Circuit concluded that the '618 patent was invalid and

reversed the judgment in favor of Metso.  On August 9, 2013, the Federal Circuit denied Metso's

motion for reconsideration.  On August 16, 2013, the Federal Circuit entered its final Judgment

in favor of Powerscreen, and issued its Mandate.  In doing so, the Federal Circuit

stated that "no costs" were awarded.  Metso has indicated that it intends to appeal that

reversal to the Supreme Court of the United States.

On September 9, 2013, Powerscreen moved for (1) release of the bond and (2)

enforcement of the orders requiring Metso to reimburse Terex for the premium paid for

the bond, an amount that totaled $400,000.

On September 13, 2013, Terex paid an additional $100,000 to the surety for the quarterly

installment corresponding to the bond premium from July 6, 2013 through October 6, 2013, the

first quarter of the second year the bond was in place.  Interestingly, the invoice was dated July

22, 2013, and stated that installment payment was "due upon receipt."  In addition, above the

remittance form to be sent to the surety along with a check were the typewritten words, "This is a

Reissued Invoice," suggesting that Terex may have been delinquent in paying the installment

payment for the coverage period beginning on July 6, 2013.

Also, on September 13, 2013, Powerscreen filed a supplemental declaration, exhibits, and

an amended proposed order.  The Supplemental Declaration stated that "[s]ince the filing of the

Motion" on September 9, 2013, Terex "[h]ad received an invoice from the bond surety in the

amount of $100,000." (Trembath Decl, at ¶ 3.)

4

On September 23, 2013, Metso consented to Powerscreen's request to rescind the bond, but opposed that part of Powerscreen's motion to recover the bond costs on behalf of Terex. Metso acknowledged that Powerscreen sought $500,000 and generally disputed Powerscreen's entitlement to that amount. However, Metso did not specifically argue, as it does now, that the additional $100,000 payment Terex made, almost one month after the Federal Circuit mandate, was different in kind from the $400,000 in payments made prior to that mandate.

On November 27, 2013, the Court granted Powerscreen's motion seeking reimbursement in the amount of $400,000. The Court reasoned that Metso was "liable for its pro rata share, 100% of the cost of the appeal bond, $400,000." However, the Court did not acknowledge that Terex had paid the additional $100,000 quarterly bond premium and sought recovery of that sum. On December 5, 2013, the Clerk of the Court entered judgment in favor of Terex in the amount of $400,000.

On December 19, 2013, Powerscreen filed a letter motion and declaration with proof of payment of the additional $100,000 Terex paid, seeking to correct the judgment to include the full cost of the bond premium in an amount of $500,000. Metso opposed the letter motion.

On December 27, 2013, this Court denied Powerscreen's letter motion without prejudice as not compliant with Local Civil Rule 7.1.

On January 3, 2014, Powerscreen submitted a formal motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.) 59(e) or, in the alternative, Fed. R. Civ. P. 60(a), seeking to correct the judgment to reflect the additional $100,000 bond premium paid by Terex. Metso opposes this motion. In particular, Metso faults Powerscreen for failing to seek release of the bond immediately after the May 14, 2013 Federal Circuit order reversing the jury verdict. In this regard, Metso contends that Powerscreen could have avoided this additional $100,000 payment

but failed to mitigate the cost of the bond.  Powerscreen counters that the Federal Circuit decision was not final until it issued its mandate on August 16, 2013, and that Powerscreen, in fact, mitigated the cost of the bond "to the extent feasible by arranging for invoice of the annual bond premium on a quarterly basis." (Powerscreen Reply Mem., at 5.)  Metso responds that, even after the mandate was issued on August 16, 2013, Powerscreen did not move to release the bond until September 9, 2013, at which time it did not mention the next quarterly installment Terex was set to pay.

However, the Court need not address these arguments because, in its view, the omission of the additional $100,000 payment in the November 27, 2013 decision constituted a "clerical mistake" correctable under Fed. R. Civ. P. 60(a).

As an initial matter though, the Court finds that to the extent Powerscreen seeks relief under Fed. R. Civ. P. 59(e), Powerscreen's motion is untimely.  Courts have recognized three major grounds justifying reconsideration pursuant to Rule 59(e): "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations and internal quotation marks omitted).  To invoke Rule 59(e) to alter or amend a judgment, the moving party must move "no later than 28 days after entry of judgment." Fed. R. Civ. P. 59(e); see also Local Civil Rule 6.3.  Moreover, under Fed. R. Civ. P. 6(b), courts may not extend the time for taking any action under Rule 59(e). Goldstein v. Hulihan, 09 CIV. 6824 CS (PED), 2012 WL 1438259, at *5 (S.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 09-CV-6824 (CS)(PED), 2012 WL 1438251 (S.D.N.Y. Apr. 25, 2012); see also Jackson v. Crosby, 375 F.3d 1291, 1293 n. 5 (11th Cir. 2004) (noting that the additional 3 days provided

in Fed. R. Civ. P. 6(d), formerly Rule 6(e), "can never extend the time for filing a Rule 59(b) or (e) motion").

In this case, Powerscreen filed its procedurally-improper letter motion on December 19, 2013. The Court denied that motion without prejudice, giving Powerscreen a window of 14 days under Fed. R. Civ. P. 59(e) to file a formal motion (i.e., by January 2, 2014, or 28 days after the December 5, 2013 judgment). Instead, Powerscreen filed its motion on January 3, 2014, 29 days after the judgment.

Powerscreen contends that its December 19, 2013 letter motion was timely and therefore, under the provision of Fed. R. Civ. 59(e), the Court may consider on the merits Powerscreen's otherwise untimely motion filed on January 3, 2014. However, as the Second Circuit has held, "[a]ny interpretation of the rules permitting piecemeal filing, as [Powerscreen] advances here, would allow parties to circumvent the purpose of Rule 60's time limits by filing incomplete motion papers at the deadline." Colucci v. Beth Israel Med. Ctr., 531 F. App'x 118, 120 (2d Cir. 2013); cf. Feldberg v. Quechee Lakes Corp., 463 F.3d 195, 197 (2d Cir. 2006) ("Permitting the [plaintiffs] to supplant their timely yet insufficient 'placeholder' Rule 59(e) motion . . . with their subsequent augmented filing . . . would afford them an easy way to circumvent Rule 60(b)'s prohibition on granting an enlargement of time for filing motions under Rule 59(e).").

Nonetheless, as noted above, the Court finds that relief is appropriate under Fed. R. Civ. P. 60(a), which "has no time limit." Uni-Rty Corp. v. Guangdong Bldg. Fin., Inc., 95 CIV. 9432 (GBD), 2013 WL 150214, at *3 (S.D.N.Y. Jan. 11, 2013). Rule 60(a) provides that a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The decision to award relief pursuant to Rule 60(a) rests within the sound discretion of the district court." Peyser v.

<u>Searle Blatt & Co., Ltd.</u>, 99 CIV. 10785 (WK), 2003 WL 1610772, at *1 (S.D.N.Y. Mar. 24, 2003).

The November 27, 2013 order makes clear that Metso is liable for its pro rata share, 100%, of the cost of the appeal bond, without any caveats as to the timing of the release of the bond. In this regard, permitting Terex to recover the additional $100,000 premium payment does not "provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized." <u>L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.</u>, 00-CV-7394 (ADS), 2013 WL 3863892, at *4 (E.D.N.Y. July 25, 2013)(citations and quotation marks omitted)(Spatt, J.). Rather, the Court makes this correction to reflect its "contemporaneous intent" at the time of the initial decision. <u>Garvies Point Rd. Corp. v. City of Glen Cove</u>, 11-CV-0949 (JS)(WDW), 2012 WL 3288885, at *2 (E.D.N.Y. Aug. 10, 2012).

The Court emphasizes that the issue of the $100,000 premium payment was previously before the Court, and Metso had the opportunity to, but did not argue, as it does now, that this payment "stands in an entirely different category than the $400,000 award" in light of Powerscreen's alleged dilatory tactics with respect to the final bond premium payment. (Metso Mem. in Opp., at 11.) In this regard, the Court finds that there were no unnecessary dilatory tactics by Powerscreen in regard to the additional $100,000 bond payment.

For the foregoing reasons, the Court grants in part and denies in part Powerscreen's motion to amend or correct the December 5, 2013 judgment granting Powerscreen's motion for reimbursement of the bond premium in the amount of $400,000. The motion is denied as untimely to the extent Powerscreen seeks relief under Fed. R. Civ. P. 59(e). The motion is

8

A11

granted to the extent Powerscreen seeks relief under Fed. R. Civ. P. 60(a). The Clerk of the

Court is directed to amend the December 5, 2013 judgment to enter judgment in favor of Terex

Corporation in an additional amount of $100,000, for a total of $500,000.

**SO ORDERED.**

Dated: Central Islip, New York
January 29, 2014

                            *Arthur D. Spatt*                  
                            ARTHUR D. SPATT
                         United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
METSO MINERALS, INC.,

               Plaintiff,

        -against-

POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as
TEREX GB LIMITED, TEREX
CORPORATION, POWERSCREEN NEW
YORK, INC. and EMERALD EQUIPMENT
SYSTEMS, INC.,

               Defendants.
-------------------------------------------------------X

**FILED**
**CLERK**

11/27/2013 12:47 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**SHORT ORDER**
06-cv-1446 (ADS)(ETB)

**APPEARANCES:**

**Cozen O'Connor**
*Attorneys for the Plaintiff*
277 Park Avenue
New York, NY 10172
      By:    Michael C. Stuart, Esq.
               Marilyn Neiman, Esq.
               Lisa Ferrari, Esq., Of Counsel

**Lathrop & Gage LLP**
*Attorneys for the Defendants*
950 17th Street, Suite 2400
Denver, CO 80202
      By:    Jon R. Trembath, Esq., Of Counsel

**SPATT, District Judge.**

      This matter was tried before a jury from October 18 to December 6, 2010.  On March 3,

2011, judgment was entered in favor of the Plaintiff Metso Minerals Inc. ("Metso").  Following

certain post-trial proceedings, on August 18, 2011, the Defendants Powerscreen International

Distribution Limited, now known as Terex GB limited, Terex Corporation ("Terex"),

Powerscreen New York, Inc., and Emerald Equipment Systems, Inc. (collectively

"Powerscreen") appealed to the United States Court of Appeals for the Federal Circuit from the

Court's orders relating to a motion by Metso for injunctive relief.

On January 6, 2012, Powerscreen appealed to the Federal Circuit from the Court's

judgment based on the jury verdict, and the orders regarding pre- and post-trial motions, and

other decisions and rulings affecting the questions of the validity and infringement of U.S. Patent

No. 5,577,618 ("the '618 patent").

On June 22, 2012, this Court held a hearing regarding whether to stay all post-trial

proceedings as well as regarding the propriety and amount of a bond on appeal. Regarding a

bond, the following colloquy took place:

> THE COURT: I don't understand why a bond is not posted. I will find out. Why
> isn't a bond posted?
>
> MR. TREMBATH: Your Honor, one wasn't required. We are happy to post a
> bond. Give us three weeks. We will post it for the $50 million, as proposed, with
> a caveat that if the final judgment isn't $50 million, we would like Metso to pay a
> pro rata share of the cost of the bond. If that is okay with the court.
>
> THE COURT: I'm sorry. You will post a bond for the whole $50 million and
> what?
>
> MR. TREMBATH: If their judgment doesn't total $50 million at the end of the
> day, because we are operating on their number, we don't think they get the $50
> million.
>
> THE COURT: If not $50 million, they will pay back the amount of the bond.
>
> MR. TREMBATH: The bond.
>
> THE COURT: That is fair enough. What do you say about that?
>
> MR. STUART: Well, first of all, they have looked at all our filing and they have
> admitted at least $44 million. So we are talking about a difference of $6 million.
> And I think that it is premature to make any sort of ruling on that or ask us to
> agree to anything. After there is an appeal, then they can ask for costs based upon

A14

whatever theories they have. Whatever the law is. I haven't looked at what the law is.

THE COURT: I am surprised. I guess I'm not understanding. Here they have offered to put up a bond for the entire amount that you say is due, and all they say is that if it is ultimately determined that that is not the amount you should collect, you should pay them back for part of the bond, and you say no?

MR. STUART: You are talking about the cost of the bond?

THE COURT: Yes.

MR. STUART: The difference. I haven't looked at the law but my guess is that we would be liable for that under --

THE COURT: I'm not interested in whether you are liable.

MR. STUART: So I think yes. Yes.

THE COURT: They have made a very good suggestion.

MR. STUART: Yes. We will agree to that.

. . .

THE COURT: Bond for $50 million by July 13. You will send me a letter saying you are [] putting up the bond. And the only condition is, if it is ultimately decided by the federal circuit or by this court that it is not the full $50 million, that percentage-wise on the cost of the bond they will reimburse you.

(Trembath Decl., ¶ 4 & Ex. A, at 7-9.)

On June 25, 2012, the Court issued an order which provided, in pertinent

part:

> [A]s stated on the record on June 22, 2012, the Defendants shall file an appeal bond in the amount of $50 million by July 16, 2012. If the Plaintiff does not eventually recover this full amount, it shall be responsible for its pro rata share of the cost of the bond.

On July 12, 2012, Powerscreen filed the bond. On August 3, 2012, the Court entered the

bond as an order:

Plaintiff has agreed that a bond in the amount of $50,000,000 will adequately guarantee Plaintiff of full payment and that if the ultimate award granted is less tha[n] $50,000,000, Plaintiff will reimburse Defendants for the cost of the bond above the amount finally awarded.

Metso never appealed nor challenged the Court's orders regarding the bond.

On May 14, 2013, the Federal Circuit concluded that the '618 patent was invalid and reversed the judgment in favor of Metso. On August 16, 2013, the Federal Circuit entered its final Judgment in favor of Powerscreen, and issued its Mandate. In doing so, the Federal Circuit stated that "no costs" were awarded. Metso has indicated that it intends to appeal that reversal to the Supreme Court of the United States.

On September 13, 2013, Powerscreen moved for (1) release of the bond and (2) enforcement of the orders requiring Metso to reimburse Terex for the premium paid for the bond. Metso consented to Powerscreen's request to rescind the bond, but opposed that part of Powerscreen's motion to recover the bond costs on behalf of Terex.

According to Metso, because the Federal Circuit explicitly awarded "No Costs" and Powerscreen did not seek reconsideration of that order, Powerscreen is not entitled their costs on the appeal, including the costs associated with what Metso characterizes as a supersedeas bond. Powerscreen contends that the Federal Circuit could not alter the orders regarding the "appeal bond" because Metso did not appeal them.

As an initial matter, the Court determines whether the subject bond is properly classified as an "appeal bond" or a "supersedeas bond." The Federal Rules of Appellate Procedure use the term "supersedeas bond" as something distinct from an "appeal bond" or a "cost bond." Compare Rule 7 (regarding bonds "to ensure payment of costs") with Rule 8 (regarding among other things "supersedeas bonds"). "It appears that a 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment and stay of its execution,

4

A16

whereas a 'cost bond' is prospective relating to the potential expenses of litigating an appeal."

Adsani v. Miller, 139 F.3d 67, 70 n. 2 (2d Cir. 1998).

In this case, notwithstanding the Court's previous reference to the subject bond as an "appeal bond," the bond is more appropriately classified as a supersedeas bond, designed to protect Metso in the event Powerscreen could not satisfy the judgment. In this regard, the $50 million figure derived from Metso's representations that the final judgment could approach that number.

As to the taxation of premiums paid for a supersedeas bond, Federal Rule of Appellate Procedure 39 provides, in pertinent part,

> (a) Against whom assessed. The following rules apply unless the law provides or the court orders otherwise:
>
> . . .
>
> (3) if a judgment is reversed, costs are taxed against the appellee ...
>
> . . .
>
> (e) Costs on appeal taxable in the district court. The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
>
> . . .
>
> (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal.

Here, this Court entered the supersedeas bond as an order:

> Plaintiff has agreed that a bond in the amount of $50,000,000 will adequately guarantee Plaintiff of full payment and that if the ultimate award granted is less tha[n] $50,000,000, Plaintiff will reimburse Defendants for the cost of the bond above the amount finally awarded.

In other words, the Court directed that Powerscreen post a bond in the amount of $50 million, subject to the condition that Metso would repay its pro rata share of the bond premium if it recovered less than $50 million.

Neither party cites a case where a District Court decided the issue of liability for superseadeas bond premiums prior to the resolution of the appeal. However, in the Court's view, nothing in the Federal Rules of Appellate Procedure or the Federal Rules of Civil Procedure precluded the Court from making this determination at that stage of the litigation.

Although Metso did not appeal the bond order or the other determinations regarding the bond, the Second Circuit determined that "no costs" of the appeal would be awarded. Indeed, the Court of Appeals, pursuant to the "court orders otherwise" language in Rule 39(a), may decline to tax the losing appellee with the cost of a supersedeas bond. <u>Campbell v. Rainbow City, Alabama</u>, 209 F. App'x 873, 874-75 (11th Cir. 2006).

The question becomes whether the Federal Circuit's "no costs" determination effectively superseded this Court's prior orders that Metso would bear its pro rata share of the bond premium if it recovered less than $50 million. The latter orders were never appealed, and therefore, in the Court's view, were not before the Federal Circuit. For this reason, the Court construes the Federal Circuit order as applying to costs on appeal other than bond premiums.

Metso makes much of the fact that Powerscreen did not seek to tax the bond premium as a cost in its bill of costs. However, no such application was necessary because the plain terms of the bond, albeit misnamed as an appeal bond, provided for disposition of the bond premium in the event Metso recovered less than $50,000,000. Metso recovered nothing. Accordingly, it is liable for its pro rata share, 100%, of the cost of the appeal bond, $400,000.

The result reached here is equitable. The bond was obtained solely for Metso's benefit in that, during the period between the approval of the bond until the Federal Circuit finally resolved the appeal, Metso enjoyed the assurance it could collect up to $50 million if it ultimately prevailed. At this time, the Court is simply requiring Metso to pay for the cost of that benefit.

Metso also contends that, should this Court find Metso liable for the bond premium, it would only be obligated for a part of that premium. This contention is without merit. Simply put, Metso's obligation to bear its pro rata share of the bond premium stems from this Court's June 25, 2012 and August 3, 2012 orders and the plain terms of the bond itself, not from any agreement or contract entered into by the parties on the record.

As a final matter, Metso asserts that the motion to recover bond costs is improper because it was filed by Powerscreen, not Terex, the entity that paid the bond costs. Metso expresses a concern about paying Powerscreen only to have Terex later claim it was the party to whom the obligation was owed. However, while Powerscreen's notice of motion refers to a judgment for Powerscreen, the proposed order would award recovery to Terex, the _only_ entity entitled to the cost of the bond premiums.

For the foregoing reasons, Powerscreen's motion for reimbursement of the bond premium is granted and the Clerk of the Court is directed to enter judgment in favor of Terex Corporation and against the Plaintiff Metso Minerals Inc. in the amount of $400,000.

**SO ORDERED.**

Dated: Central Islip, New York
November 27, 2013

_____ _Arthur D. Spatt_ _____ _____
ARTHUR D. SPATT
United States District Judge

7

A19

## PROOF OF SERVICE

I hereby certify that on this day, I caused to be electronically filed with the U.S. Court of Appeals for the Federal Circuit a complete and correct copy of the foregoing **BRIEF OF PLAINTIFF-APPELLANT METSO MINERALS, INC.** by means of the Court's CM/ECF system, which will send notice of such filing to the following registered CM/ECF users:

> Jon R. Trembath, Esq.
> Alexander C. Clayden, Esq.
> Allison S. Wallin, Esq.
> Lathrop & Gage LLP
> 950 17th Street, Suite 2400
> Denver, CO 80202
> jtrembath@lathropgage.com
> aclayden@lathropgage.com
> awallin@lathropgage.com

> Attorneys for Defendant-Appellee Terex Corporation

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via UPS, within the time provided in the Court's rules.

May 12, 2014                              /s/ Michael C. Stuart
                                         Michael C. Stuart
                                         Attorney for Plaintiff-Appellant
                                         METSO MINERALS, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.   This brief complies with the type volume limitation of Rule 32(a)(7)(B), Fed.R.App.P. because:
    -   this brief contains 9,034 words, excluding parts of the brief exempted by Rule 32(a)(7)(B)(iii), Fed. R. App. P., and Federal Circuit Rule 32(b)

2.   This brief complies with the typeface requirements of Rule 32(a)(5), Fed.R.App.P., and the type style requirements of Rule 32(a)(6), Fed. R. App. P. because:
    -   this brief was prepared in a proportionally spaced typeface, using Microsoft Office Word 2010 in 14 Times New Roman font.

May 12, 2014                                   Respectfully submitted,

                                              /s/ Michael C. Stuart
                                              Michael C. Stuart
                                              Lisa A. Ferrari
                                              COZEN O'CONNOR
                                              277 Park Avenue
                                              New York, New York 10172
                                              Tel: 212-883-4900
                                              Fax: 212-656-1692

                                              Attorneys for Plaintiff-Appellant
                                              METSO MINERALS, INC.