No. 2014-1352

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

METSO MINERALS INC.,

*Plaintiff-Appellant*,

v.

TEREX CORPORATION

*Defendant-Appellee.*

---

Appeal from the United States District Court for the Eastern District of New York
in case no. CV-06-1446, Judge Arthur D. Spatt

---

## RESPONSE BRIEF OF DEFENDANT-APPELLEE TEREX CORPORATION

---

Jon R. Trembath
Allison S. Wallin
Alexander C. Clayden
Lathrop & Gage LLP
950 Seventeenth Street, Suite 2400
Denver, Colorado 80202
(720) 931-3200

Attorneys for Defendant-Appellee
Terex Corporation

June 26, 2014.

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee, Terex Corporation, certifies the following:

1.     **The full name of every party represented by us is:**

     Terex Corporation

2.     **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:**

     Not applicable

3.     **All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party or amicus curae represented by us are:**

     There is no parent corporation of Appellee Terex Corporation.  No publicly held companies own 10% or more of Terex Corporation.

4.     **The name of all law firms and the partners or associates that appeared for Terex Corporation in trial court or are expected to appear in this Court are:**

     **Lathrop & Gage LLP**
     Jon R. Trembath
     Allison S. Wallin
     Alexander C. Clayden

     **Squire, Sanders & Dempsey (US) LLP**
     George B. Yankwitt
     Mary M. Chang
     Nathan Lane III
     Andrew H. Fried
     Xavier Brandwajn

     **Clauss & Sabatani**
     Ava R. Maynard

June 26, 2014                        _s/  Jon R. Trembath_____
                                   Jon R. Trembath

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................1

STATEMENT OF THE ISSUES ........................................................................1

STATEMENT OF THE CASE ............................................................................1

STATEMENT OF THE FACTS ..........................................................................4

    A.    The District Court's Judgment, First Permanent Injunction and Bond Proceedings. ...............................................................................4

    B.    The District Court Corrects Its Permanent Injunction, Mooting the Immediate Need For a Bond, and Defendants Appeal. .................6

    C.    The District Court Denies Powerscreen's JMOL Motion and Powerscreen Appeals. .........................................................................6

    D.    The Bond Issue Was Revisited in April 2012 in the Context of Damages Accounting. .......................................................................7

    E.    The Court Exercises its Discretion to Require a $50 Million Bond On the Condition that Metso Reimburse its Pro Rata Share of the Bond Premium Following Appeal. ..................................8

    F.    May 14, 2013 the Federal Circuit Determines that the '618 Patent Is Invalid as Obvious. ...........................................................10

    G.    Terex Negotiates a Reduced Premium on the Bond on a Quarterly Basis in Anticipation of the Imminent Issuance of the Mandate and Release of the Bond by the District Court ..................10

    H.    The District Court Releases the Bond on September 30, 2013 .........11

    I.    The Court Grants Powerscreen's Motion to Enforce the Bond Order as Law of the Case. ................................................................12

SUMMARY OF THE ARGUMENT ................................................................13

ARGUMENT....................................................................................................14

I.    Standard of Review.................................................................................14

II.    This Court's Mandate Did Not Apply To The Supersedeas Bond Premium Because The Underlying Bond Order Was Not Part Of The Prior Appeal....................................................................................14

# TABLE OF CONTENTS
### (continued)

III.  If The District Court's Order Were Deemed "Within The Compass" Of The Mandate, An Exception To The Mandate Rule Should Apply Permitting The District Court To Enforce Its Unappealed Bond Order. .....20

  A.  Enforcement of the Bond Order Accords with the Mandate Rule. ...............................................................................20

  B.  Exceptions to the Mandate Rule Should Apply. ...............................23

IV.  This Court May Reconsider Its Blanket Denial Of Costs In Light Of The Bond Order—A Fact Unknown To This Court At The Time Costs Were Denied Because Metso Did Not Appeal The Order. .........................25

V.  Metso's Other Arguments Seeking to Avoid the Bond Order Are Not Supported In Law Or Fact. .........................................................................27

VI.  The District Court Properly Exercised Its Discretion To Amend The Judgment To Include The Full Amount Of Bond Premium Owed By Metso. ..........................................................................................................30

CONCLUSION ..........................................................................................................32

PROOF OF SERVICE ............................................................................................1

CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL CIRCUIT RULE 32(a) ...............................................................................................................1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo-Garcia v. Vera-Monroig,*
  296 F.3d 13 (1st Cir. 2002) ....................................................................17

*In re Am. Preferred Prescription, Inc.,*
  255 F.3d 87 (2d Cir. 2001).....................................................................28

*Autotech Techs. LP v. Integral Research & Dev. Corp.,*
  499 F.3d 737 (7th Cir. 2007).................................................................21

*Beatrice Foods Co.,*
  930 F.2d 1572 (Fed. Cir. 1991)............................................................29

*Bergerson v. New York State Office of Mental Health,*
  652 F.3d 277 (2d Cir. 2011)..................................................................18

*In re Calmar, Inc.,*
  854 F.2d 461 (Fed. Cir. 1988)..............................................................17

*Corporacion de Mercadeo Agricola v. Mellon Bank Int'l,*
  608 F.2d 43 (2d Cir. 1979)....................................................................26

*County of Suffolk v. Stone & Webster Eng'g Corp.,*
  106 F.3d 1112 (2d Cir. 1997)...........................................................14, 30

*Creek v. Village of Westhaven,*
  144 F.3d 441 (7th Cir. 1998).................................................................18

*Engel Indus., Inc. v. Lockformer Co.,*
  166 F.3d 1379 (Fed. Cir. 1999).................................................15, 16, 19

*Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc.,*
  804 F.2d 787 (2d Cir. 1986)............................................................14, 32

*Exxon Corp. v. United States,*
  931 F.3d 874 (Fed. Cir. 1991)........................................................15, 26

*FCC v. Pottsville Broad. Co.,*
  309 U.S. 134 (1940).................................................................................15

iii

*Greenfield v. Philles Records, Inc.*,
780 N.E.2d 166 (N.Y. 2002) ...........................................................29

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982)........................................................................16

*H.A. Jones Co., Inc. v. KSM Fastening Sys., Inc.*,
745 F.2d 630 (Fed. Cir. 1984) ....................................................21, 29

*Ins. Co. of the West v. United States*,
243 F.3d 1367 (Fed. Cir. 2001) .......................................................29

*Invention Submission Corp. v. Dudas*,
413 F.3d 411 (4th Cir. 2005)...........................................................23

*Isidor Paiewonsky Assocs. v. Sharp Props., Inc.*,
998 F.2d 145 (3d Cir. 1993)........................................................28, 29

*Jamesbury Corp. v. Litton Indus. Prods., Inc.*,
839 F.2d 1544 (Fed. Cir. 1988) ...................................................25, 26

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009)..............................................................18

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) .........................................................14

*Landis v. North Am. Co.*,
299 U.S. 248 (1936).......................................................................17

*Lazare Kaplan Int'l v. Photoscribe Tech.*,
714 F.3 1289 (Fed. Cir. 2013) .........................................................21

*Luckey v. Miller*,
929 F.2d 618 (11th Cir. 1991)..........................................................15

*MacEwen Petroleum, Inc. v. Tarbell*,
136 F.3d 263 (2d Cir. 1998).............................................................28

*Miami Int'l Realty Co. v. Paynter*,
807 F.2d 871 (10th Cir. 1986)..........................................................17

21895120v1

*Moore v. Anderson,*
  222 F.3d 280 (7th Cir. 2000) ............................................................. 15

*Nat'l Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc.,*
  198 F.2d 927 (2d Cir. 1952) .............................................................. 27

*Quern v. Jordan,*
  440 U.S. 332 (1979) ........................................................................... 19

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.,*
  731 F.2d 840 (Fed. Cir. 1984) ........................................................... 24

*Sprague v. Ticonic Nat'l Bank,*
  307 U.S. 161 (1939) .................................................................... 14, 15

*Tronzo v. Biomet, Inc.,*
  236 F.3d 1342 (Fed. Cir. 2001) ............................................... 20, 21, 25

*United States v. Robinson,*
  690 F.2d 869 (11th Cir. 1982) ........................................................... 23

*United States v. Stanley,*
  54 F.3d 103 (2d Cir. 1995) ................................................................ 15

*Zdanok v. Glidden Co.,*
  327 F.2d 944 (2d Cir. 1964) .............................................................. 18

## Statutes

28 U.S.C. § 452 .................................................................................... 27

28 U.S.C. § 1292(c)(2) ......................................................................... 29

## Other Authorities

Fed. Cir. R. 35(b) ................................................................................ 31

Fed. R. App. P. 4(a)(1)(A) ................................................................... 21

Fed. R. Civ. P. 39(e) ........................................................................... 18

Fed. R. Civ. P. 62(a) ........................................................................... 17

Rule 60 ................................................................................................ 14

21895120v1

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Terex states as follows:

(a) An appeal from the same civil action was previously before this Court;

(1) The title and number of that earlier appeal was *Metso Minerals, Inc. v. Powerscreen International Distribution, Limited (now known as Terex GB Limited), Powerscreen New York, Inc. and Emerald Equipment Systems, Inc., and Terex Corporation*; Nos. 11-1572, 12-1168, 12-1169;

(2) The date of the decision was May 14, 2013;

(3) The composition of the panel was Circuit Judges Dyk, Mayer, and Reyna;

(4) The opinion was not selected for publication in the Federal Reporter but may be found at 526 Fed.Appx. 988 (Fed. Cir. 2013); and

(b) Terex is aware of no case that will directly affect or be directly affected by this Court's decision in the pending appeal.

## <u>STATEMENT OF THE ISSUES</u>

Whether this Court's mandate precluded the district court from enforcing an unappealed Order that Metso reimburse Terex for the portion of the cost of a supersedeas bond corresponding to the difference between what Metso was ultimately awarded and the $50 million bond Ordered by the District Court?

Whether, after entering a judgment enforcing an order requiring Metso to reimburse Terex for the cost of a supersedeas bond, the district court abused its discretion when the court misapprehended the cost of the bond and used Rule 60 to modify the judgment to reflect the actual cost of the bond premium paid?

## STATEMENT OF THE CASE

On March 29, 2006, plaintiff-appellant Metso Minerals, Inc. ("Metso") sued Defendants Powerscreen International Distribution Limited, Terex Corporation ("Terex"), Powerscreen New York, Inc., and Emerald Equipment Systems, Inc. (collectively, "Powerscreen") for infringement of U.S. Patent No. 5,577,618 ("the '618 Patent"), entitled "Mobile Aggregate Material Processing Plant." After four years of litigation that generated over 400 docket entries, the district court held a seven-week jury trial, starting October 14, 2010. A324; A325. On December 6, 2010, the jury returned a verdict finding that Powerscreen willfully infringed the '618 patent and awarded $15.8 million in damages. A62. In January 2011, Metso requested permanent injunctive relief against Powerscreen. A326-344.

The District Court entered judgment on the Jury's verdict of infringement on March 3, 2011. A345-348. In April 2011, Powerscreen filed motions for a new trial and judgment as a matter of law ("JMOL motion"). A349-350; A351-374; A375-377.

The District Court initially granted a permanent injunction on May 26, 2011, and modified the injunction on July 21, 2011. A378-390; A401-403. Powerscreen timely appealed the District Court's permanent injunction on August 18, 2011. A404-406. On December 8, 2011, the District Court denied Powerscreen's JMOL

motion.  A407-477.  Powerscreen then timely appealed the judgment and the District Court's orders denying their JMOL motion.  A517-519; A520-522.

Metso did not file a cross appeal.  After Powerscreen's appeals, the parties continued to litigate various issues over which the District Court retained jurisdiction.  A20-25; A26-28; A29-43; A391-397; A398-400.  Among them, the parties litigated the question of whether a supersedeas bond was required to stay any attempts to enforce the judgment on the jury's verdict and supplemental damages and accounting issues that Metso wished to pursue pending appeal.  A20-25; A26-28; A29-43; A391-397; A398-400.

Metso threatened the implied license that would attach to Powerscreen's product upon judgment satisfaction by contacting Powerscreen's customers while arguing to the District Court that machines covered by the judgment should be exported.  A236.  In essence, Metso wanted to be paid damages to compensate it for future use of Powerscreen's machines while causing the machines to be exported so they could not be used in the United States.  *See* A236; A345-348.  To preclude Metso's double recovery, Powerscreen moved to stay the judgment pending appeal.  A143-154.  In response, Metso requested that the Court require Powerscreen to post a bond in the exorbitant amount of $122 million.  A391-392. Powerscreen objected to Metso's ungrounded request and pointed out the fact that the annual premium on such a bond would be roughly 1% of the total amount, or

2

over $1.2 million per year. A398. Ultimately, the District Court's subsequent amendment of its permanent injunction precluded Metso's attempted double recovery mooted the issue of an immediate stay. A401-403.

The issue of staying the litigation again arose in mid-2012 as Metso continued to press forward with supplemental damages discovery and accounting matters. A264; A269-270; A26-28. On June 22, 2012, the District Court conducted a hearing to address the stay of the ongoing damages proceedings pending appeal and the nature and terms of any bond required to effectuate such stay. A29-43.

At the hearing on June 22, 2012, the District Court ruled that Powerscreen must post a bond in the amount of $50 million, but that if Metso did not ultimately recover such amount, it would be required to reimburse its pro rata share of the cost of the bond. A37. The District Court memorialized this oral ruling in a written order on June 25, 2012 (hereinafter, the "bond Order"). A44-45. Thereafter, Terex contracted with a surety to obtain a bond conforming to the District Court's order and, on July 12, 2012, submitted it to the District Court for approval. A46-53. The District Court approved the bond posted by Terex, and entered it as an order of the District Court on August 3, 2012. A72-78.

Metso did not appeal the bond Order (or any related order) following its entry. This Court found the asserted claims of the'618 Patent obvious and

3

reversed. Terex then requested the District Court to enforce its bond Order requiring Metso to reimburse Terex for the bond premium. A523-525; A101-104; A105; A106-107; A108; A109-111; A112-114; A115-116; A126-127. The District Court granted Terex's motion and entered judgment against Metso for the bond premium in the amount of $500,000. A13-19; A3; A4-12; A1-2. Metso appealed the District Court's orders and judgments enforcing that prior law of the case, but did not designate the bond Order as part of its appeal. A130-131; A140-142.

**STATEMENT OF THE FACTS**

**A.     The District Court's Judgment, First Permanent Injunction and Bond Proceedings.**

The District Court's May 26, 2011 injunction not only required Powerscreen, at significant expense, to rename and redesign all machines found to infringe the '618 Patent, but also purported to interfere with the right to use and resell machines covered by the jury's damages award (machines impliedly licensed under the '618 Patent). A390. Powerscreen moved to amend the injunction to prevent Metso's interference with Powerscreen's rights arising from a satisfied judgment. A531-533; A537-539.

On July 1, 2011, Powerscreen filed an emergency motion to stay enforcement of the non-injunctive aspect of the final judgment. A143. Powerscreen's motion to stay was precipitated by Metso's attempt to obtain a

punitive double recovery by receiving payment from Powerscreen on the judgment (which would result in an implied license) while also using the permanent injunction to prevent enjoyment of the license. *Id.*; A150-51.

At the July 6, 2011, hearing on Powerscreen's motion to stay the injunction, Terex offered to immediately provide a guarantee of the judgment in the form of a letter of credit, rather than a bond. A277-78; A288; A293. This approach would have assured Metso's recovery on the judgment while addressing Powerscreen's concern that, if Powerscreen prevailed on appeal, recovery of the cost of bond premiums would be difficult if not impossible from Metso, a Finnish company. A277-78; A288; A293. Further, because no final monetary judgment had yet entered (Metso was still pursuing supplemental damages and accounting issues), the proper amount of a bond was not easily discernable. A277-78; A293; A303-04; A311.

Metso refused to accept Terex's offer of a letter of credit, instead claiming erroneously that the final judgment could exceed $120 million and insisting that Powerscreen post a bond of at least $125 million.[1] A279-284; A291. In its briefing to the District Court on the amount of the bond, Metso again refused to agree to Terex's offered letter of credit and demanded a bond for $122 million as

---

[1] Unlike Metso, Terex agreed to accept Metso's letter of credit to effectively stay enforcement of the $500,000 judgment against Metso pending this appeal.

to each of the defendants in the case.   A391-392.   Powerscreen's responsive briefing pointed out the significant errors and overreaching inherent in Metso's request for a $122 million bond, and informed Metso and the District Court that such a bond would be roughly 1% of the total amount, or over $1.2 million per year.  A398.

### B.    The District Court Corrects Its Permanent Injunction, Mooting the Immediate Need For a Bond, and Defendants Appeal.

On July 21, 2011, the District Court vacated its May 26, 2011 injunction and entered a new permanent injunction that precluded Metso's mischief and obviated Powerscreen's need for an immediate stay and the supporting security.  A401-403. The Amended Permanent Injunction foreclosed Metso's attempt to gain double punitive recovery, providing:   "For the sake of clarity, this injunction does not apply to individual devices with respect to which infringement by the defendants has already occurred as of Monday, July 11, 2011, as the plaintiffs either have been or will be monetarily compensated for this infringement."  A403.

On August 18, 2011, Powerscreen timely filed a Notice of Appeal of the Court's Amended Permanent Injunction.  A404-406.

### C.    The District Court Denies Powerscreen's JMOL Motion and Powerscreen Appeals.

On December 8, 2011, the District Court denied Powerscreen's JMOL motion and motion for a new trial.  A407-477.   In the same ruling, the District

Court also granted Metso's motion to enhance the damages award and doubled the award to $31.6 million; granted Metso's motion for pre- and post- judgment interest; and granted Metso's motion for supplemental accounting and damages. A62; A478-516.

On January 6, 2012, Defendants timely filed a Notice of Appeal of the District Court's March 3, 2011 Judgment; the Court's December 8, 2011 denial of Defendants' JMOL motion; and other orders. A517-519; A520-522.

### D. The Bond Issue Was Revisited in April 2012 in the Context of Damages Accounting.

Following Powerscreen's appeal of the judgment and denial of their JMOL motion and motion for a new trial, Metso sought to press on in the District Court with litigation of its claim for supplemental infringement damages, additional discovery on damages, and an accounting. A264. Powerscreen acknowledged that the District Court retained jurisdiction over such matters, but sought a stay of such proceedings as antithetical to judicial economy—potentially causing a significant waste of resources if Defendants succeeded on their appeal. A262-264. On May 29, 2012, following this Court's denial of Metso's motion to dismiss Powerscreen's appeals, the District Court ordered a hearing to address: whether to stay the proceedings before it, including Metso's "highly contentious supplemental damages motions" concerning the number of infringing screeners pre- and post-verdict; the proper royalty calculations; and the calculation of pre-judgment

interest. A269-270. The District Court recognized that "[t]he Federal Circuit may reverse and or remand as to any number of issues, including infringement, willfulness, and the reasonable royalty rate." A271. The District Court requested the parties to address at the hearing whether a bond had been or should be posted in connection with such a stay. *Id.*

### E. The Court Exercises its Discretion to Require a $50 Million Bond On the Condition that Metso Reimburse its Pro Rata Share of the Bond Premium Following Appeal.

On June 22, 2012, the District Court conducted the hearing regarding a stay of the damages proceedings and the nature and terms of a bond to secure Metso's potential recovery during such stay. A29-43. At the outset of that hearing, Metso acknowledged that whether to stay the pending damages proceedings was within the District Court's discretion, and the District Court highlighted its concern of a potential reversal: "The only thing is, if the federal circuit reverses and dismisses the case, for example, then all the work that I will do will be for nothing. Right?" A31-32. Given that the upper limit of liability could not be determined without an accounting and because Terex believed its appeal would succeed, in whole or in part, Terex offered to post a bond for the largest amount Metso was then requesting—$50 million—with the condition that if Metso was not ultimately awarded the full amount, Metso would reimburse Terex for the pro rata share of the bond premium that was unnecessary. A35. The Court ruled from the bench

that such was equitable under the circumstances, and Metso did not object to any aspect of the District Court's ordering a bond to be posted on those precise terms. A36-38.    The District Court's ruling was expressly premised on relieving the District Court and the parties from the laborious, and potentially unnecessary and wasteful continued litigation of Metso's motions for accounting and supplemental damages.   A30-38.

On June 25, 2012, the District Court entered its bond Order, which memorialized its June 22, 2012 oral rulings, stayed all of then-pending, unresolved motions, and required Powerscreen to post the $50 million bond.  A44-45.  The bond Order unambiguously required:

> as stated on the record on June 22, 2012, the Defendants shall file an appeal bond in the amount of $50 million by July 16, 2012.  If the Plaintiff does not eventually recover this full amount, it shall be responsible for its pro rata share of the cost of the bond.

A45.  Thereafter, Terex contracted with a surety to obtain a bond conforming to the District Court's bond Order and, on July 12, 2012, filed the bond.  A46-53. The District Court approved the bond posted by Terex, and entered it as an order of the District Court on August 3, 2012.  A72-78.  **Metso did not appeal the June 25, 2012 bond Order.**

The term of the first bond year was July 6, 2012 to July 6, 2013.  A105.  The invoice date on the bond was July 7, 2012, and Terex was required to pre-pay $400,000 for the annual premium for the cost of the bond in effect from July 6,

2012 until July 6, 2013. A105. Terex paid the $400,000 premium on August 13, 2012. A107-108. Terex was also obligated to pay another $400,000 on July 6, 2013, for the annual premium for the bond period beginning July 6, 2013, if the appeal to the Federal Circuit was unresolved. A48-49.

### F. May 14, 2013 the Federal Circuit Determines that the '618 Patent Is Invalid as Obvious.

On May 14, 2013, this Court determined that all claims of the '618 Patent were obvious in light of two prior art products made by the patentee but not disclosed to the Patent Office. A54-71. Metso petitioned the panel for rehearing and for rehearing en banc, and on August 9, 2013, the Federal Circuit denied those petitions. A79-80. In that Order, the Federal Circuit Clerk stated that the Mandate would issue on August 16, 2013. A80. The Mandate issued on August 16, 2013, and it stated that "No costs" were awarded. A81-101.

### G. Terex Negotiates a Reduced Premium on the Bond on a Quarterly Basis in Anticipation of the Imminent Issuance of the Mandate and Release of the Bond by the District Court

The second bond premium year began on July 6, 2013. At that time, this Court had yet to rule on Metso's pending rehearing petitions. Terex could not foresee that it would be another four weeks before this Court denied those petitions and six weeks before the mandate issued returning the case to the District Court for post-appeal proceedings. A112-114. In an effort to reduce the premium it was required to pay for the bond in effect beginning July 6, 2013, and in anticipation of

10

the denial of petitions and issuance of the mandate, in July 2013 Terex negotiated a quarterly bond premium payment with the bond issuer. A112-114. The quarterly bond invoice, dated July 22, 2013, required Terex to pay $100,000 for the bond premium in effect from July 6, 2013 to October 6, 2013. A112-114. Terex paid the $100,000 invoice for the quarterly bond premium on September 13, 2013. A136.

**H. The District Court Releases the Bond on September 30, 2013**

Following the August 16, 2013 issuance of the mandate, on September 9, 2013 Powerscreen filed a motion in the District Court for release of the bond. A102-116; A126-127. In the same motion, Powerscreen requested the District Court to enforce its prior Order requiring Metso to reimburse its pro rata share (100%) of the cost of the bond. A102-104. Powerscreen limited the relief requested to enforcement of the bond Order, which was law of the case, and did not request any other costs pertaining to the appeal. *See* A102-104.

By letter dated September 26, 2013, Terex advised the Court that if it did not release the bond before October 6, 2013, Terex would incur another $100,000 quarterly bond premium. A115-116. Thereafter, on September 30, 2013, the Court ordered the release of the bond. A128-129.

21895120v1

## I. The Court Grants Powerscreen's Motion to Enforce the Bond Order as Law of the Case.

On November 27, 2013, the Court granted Powerscreen's motion seeking enforcement of the bond Order, stating:

> [T]he plain terms of the bond, albeit misnamed as an appeal bond, provided for disposition of the bond premium in the event Metso recovered less than $50,000,000. Metso recovered nothing. Accordingly, it is liable for its pro rata share, 100%, of the cost of the appeal bond, $400,000 [sic]. The result reached here is equitable. The bond was obtained solely for Metso's benefit in that, during the period between the approval of the bond until the Federal Circuit finally resolved the appeal, Metso enjoyed the assurance it could collect up to $50 million if it ultimately prevailed. At this time, the Court is simply requiring Metso to pay for the cost of that benefit.

> Metso also contends that, should this Court find Metso liable for the bond premium, it would only be obligated for a part of that premium. This contention is without merit. Simply put, Metso's obligation to bear its pro rata share of the bond premium stems from this Court's June 25, 2012 and August 3, 2012 orders and the plain terms of the bond itself, not from any agreement or contract entered into by the parties on the record.

A18-19. The District Court entered a judgment against Metso for the bond premium. A3. Because the amount of the judgment was only $400,000 rather than the $500,000 paid by Terex, Powerscreen moved the District Court to correct the judgment to correctly reflect the full premium cost incurred by Terex. A8. On January 29, 2014, the District Court granted that motion, finding that its exclusion of the $100,000 bond premium covering the period from July 6, 2013 to October 6, 2013 was an oversight. A4-12. The District Court then entered an Amended Judgment on January 31, 2014, in favor of Terex for $500,000. A1-2.

12

# SUMMARY OF THE ARGUMENT

The scope, or "compass," of a mandate does not control issues not appealed. Metso did not appeal the bond Order. Therefore, it was not encompassed within this Court's mandate and was law of the case. Thus, it was within the District Court's discretion and power to enforce its unappealed bond Order.

Even if the bond Order were encompassed by the mandate, strict enforcement of the mandate rule is not justifiable because this Court was unaware of the unappealed bond Order when it fashioned the mandate and strict enforcement of the mandate would do violence to the law of the case doctrine and would unfairly reward Metso for not appealing the bond Order. Moreover, strict enforcement of the mandate would work a serious injustice.

Additionally, this Court has inherent power to modify its prior mandate to recognize and respect the District Court's considered, equitable and unappealed bond Order. The mandate should be modified because this Court was unaware of the bond Order when the mandate was issued and, if left unmodified, the mandate is inconsistent with the law of the case doctrine and is disrespectful of a District Court's efforts to fashion a fair and equitable framework for a stay.

Finally, the District Court did not abuse its discretion by correcting a clerical mistake to award Terex the full cost of the bond premium, as was intended in its

initial judgment and order awarding Terex $400,000 when the actual cost of the bond was $500,000.

## ARGUMENT

### I.    Standard of Review.

This Court reviews the interpretation of its mandate from an appeal *de novo*. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950 (Fed. Cir. 1997).   This Court reviews a district court's decision to enforce its own prior, unappealed order for an abuse of discretion, if the Order is not within the compass of this Court's mandate. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("on the remand a lower court is free as to other issues" outside the mandate); *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) ("It is 'peculiarly within the province of the district court . . . to determine the meaning of its own order,' and even if we regarded the opinion or judgment as ambiguous, we would not disturb the issuing judge's interpretation absent a clear abuse of discretion." (citations omitted)).   The district court's Rule 60 determination is reviewed for an abuse of discretion.   *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc.*, 804 F.2d 787, 796 (2d Cir. 1986).

### II.    This Court's Mandate Did Not Apply To The Supersedeas Bond Premium Because The Underlying Bond Order Was Not Part Of The Prior Appeal.

It is undisputed that "a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid at

14

rest." *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 140-41 (1940). However, "[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague,* 307 U.S. at 168. Thus, "the district court does have the power to add conditions even to an unconditional mandate when those conditions address matters that were not within the compass of the mandate. Put simply, the law of the case[2] 'does not extend to issues an appellate court did not address.'" *Moore v. Anderson,* 222 F.3d 280, 284 (7th Cir. 2000) (quoting *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991)); *see also Exxon Corp. v. United States*, 931 F.3d 874 (Fed. Cir. 1991) ("Law of the case . . . does *not* constrain the trial court with respect to issues not actually considered by an appellate court.").

A mandate's scope or "compass" is coextensive with the scope of the appeals court holding, so "observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations." *Moore*, 222 F.3d at 284; *see also Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999) (the scope of the mandate "is coterminous with the scope of the issues deemed presented to the court on appeal."). "Only the issues actually decided—those within the scope of the judgment appealed from, minus

---

[2] The mandate rule is a specific application of the "law of the case" doctrine. *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995).

those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Engel*, 166 F.3d at 1382. Even a cursory review of the holding in the prior appeal confirms that the bond Order was not formally, or informally, before this Court. *See* A54-71.

The bond Order requiring Metso to reimburse Terex for the unnecessary portion of the bond premium was not within the compass of the mandate because the Order was not part of the prior appeal. The District Court entered the bond Order on June 25, 2012, over **six months after** Terex and Powerscreen filed their January 6, 2012 notices of appeal. *Compare* A517-519 and A520-522 to A72-78. As the District Court correctly noted, "Metso never appealed nor challenged the [District] Court's orders regarding the bond." A16. Indeed, Metso admits that it could have appealed the bond Order, but never did. BB 23.

After Powerscreen filed its January 2012 notices of appeal, the parties continued to litigate regarding the amount of damages and the terms and conditions relating to a supersedeas bond. A20-25; A26-28; A29-43; A391-397; A398-400. As the parties and the District Court all acknowledged, the District Court obviously retained jurisdiction to fashion an order establishing what was required for it to stay the proceedings below. *See* A26-28; A265-267; A268-271; *see also Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (a notice of appeal divests the district court's jurisdiction only with respect to the aspects of the case

16

involved in the appeal). The District Court's equitable power to decide the terms and conditions on which to stay the litigation[3] was committed to its sound discretion. *See Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002) ("The nature and the amount of the [supersedeas] bond is entrusted to the discretion of the trial court."); *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (district courts "have inherent discretionary authority in setting supersedeas bonds."); *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988) (Fed. R. Civ. P. 62(a) grants district courts "discretion to stay or to proceed with the damages trial during the appeal."). The District Court appreciated the uncertainty of Metso ultimately recovering the inflated $50 million it requested and Metso's unwillingness to agree to a less costly procedure for securing Metso's judgment. A31-32; A35-37. Taking account of the circumstances presented to it, the District Court exercised its equitable power to protect Metso with a bond in the amount Metso insisted was appropriate while protecting Terex from cost of an excessive bond—in essence, the court ordered that Metso put its money where its

---

[3] As the Supreme Court long ago explained, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936).

mouth was.[4]  A37-38; A44-45.  The Order thus established Metso's obligation to pay its pro rata share of the bond premium, and stood unchallenged during the pendency of Powerscreen's appeal that ultimately resulted in a determination of invalidity of the patent-in-suit.  *Id.*

Even though the parties' pro rata shares of the cost of the bond could not be determined until after the conclusion of Powerscreen's appeal, the bond Order conclusively resolved the parties' obligations as to the bond cost.  Such orders become law of the case.  *E.g.*, *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009); *Bergerson v. New York State Office of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011).  "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

This Court's statement of "No Costs" in the mandate, pronounced without knowledge of such pre-existing law of the case, did not preclude the District Court from enforcing its own bond Order.   Determining what issues were actually decided by the mandate requires a "careful reading of the reviewing court's opinion[.]"  *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998)

---

[4] Such was consistent with the default allocation of the cost of a supersedeas bond set forth in Fed. R. Civ. P. 39(e), although as reflected in the transcript of the June 22, 2012 hearing, the District Court evaluated and resolved the cost allocation independent of any legal rule.  A37.

(citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)).  In interpreting a mandate's scope, "both the letter and the spirit of the mandate must be considered." *Engel*, 166 F.3d at 1383.  Since the Order was never presented as part of the prior appeal, it could not fall "within the compass" of the Court's statement of "No costs" in the mandate.  Upon return of the case to the district court, Judge Spatt carefully reviewed this Court's mandate and correctly recognized that the Order was not part of the appeal.  A16-18.

In short, the parties litigated their obligations with respect to the bond, and the District Court resolved that issue, separate and apart from Powerscreen's pending appeal.  Metso did not challenge or appeal the bond Order.  Thus, the mandate did not address the bond Order or preclude the District Court from enforcing it.  Because the bond Order was not within the scope of mandate, the District Court was free to enforce the Order, which was law of the case.  Judge Spatt certainly did not abuse his discretion when he enforced the unchallenged, unappealed bond Order compelling Metso to pay its pro rata share of the supersedeas bond premium.  Therefore, the District Court's judgment awarding Terex $500,000 should be affirmed.

## III. If The District Court's Order Were Deemed "Within The Compass" Of The Mandate, An Exception To The Mandate Rule Should Apply Permitting The District Court To Enforce Its Unappealed Bond Order.

### A. Enforcement of the Bond Order Accords with the Mandate Rule.

As with the broader law of the case doctrine, the mandate rule is designed to promote finality, judicial economy and consistency of decisions. *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1346 n.3 (Fed. Cir. 2001). "[T]hese doctrines are [] viewed as prudential doctrines that direct a court's discretion, but do not necessarily limit a court's power. *Tronzo*, 236 F.3d at 1349 (collecting cases). In exceptional cases, it may be appropriate for a district court to revisit an issue otherwise foreclosed by a mandate. *Id.* However, such must not be inconsistent with the underlying rationales for the doctrines of law of the case and the mandate rule which "include the need for (and the litigant's right to) finality, judicial economy, the consistency of judicial decisions, the discouragement of piecemeal adjudication, and the prevention of the perverse result of allowing a litigant to be in a better position by failing to raise an issue in an initial appeal." *Id.* at 1349 n.3.

In this case, the District Court's decision to enforce the unappealed Order did no violence to the rationales underlying the mandate rule and the law of the case doctrine. Indeed, blindly applying the mandate's pronouncement vis-à-vis costs, to the extent they included the bond premium, would promote "the perverse result of allowing [Metso] to be in a better position by failing to raise [the bond

cost apportionment Order] in an initial appeal." *Id.* "It is well-settled that a party must file a cross-appeal if, although successful in the overall outcome in the district court, the party seeks, on appeal, to lessen the rights of its adversary or to enlarge its own rights." *Lazare Kaplan Int'l v. Photoscribe Tech.,* 714 F.3 1289, 1293 (Fed. Cir. 2013). Metso did not appeal the Order compelling it to reimburse Terex for the pro rata share of the supersedeas bond premium; thus, the Order became law of the case. Under Metso's proposed interpretation and without consideration of the District Court's equitable balancing reflected in the unappealed bond Order, Metso would have the mandate strip Terex of rights embodied in the bond Order. Metso's position contravenes the rationales underlying the law of the case doctrine and the mandate rule.

Metso's contends that the goals of finality, judicial economy and discouragement of piecemeal adjudication are served by a blind application of the mandate in this case, but the opposite is true. The bond Order finally resolved Metso's obligation to pay for its pro rata share of the bond premium. If Metso sought to challenge that definitive allocation of liability as to the cost of the supersedeas bond, the time to do so was within 30 days of the District Court's ruling. *See* Fed. R. App. P. 4(a)(1)(A); *H.A. Jones Co., Inc. v. KSM Fastening Sys., Inc.*, 745 F.2d 630, 631-32 (Fed. Cir. 1984); *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 745 (7th Cir. 2007) (a post-judgment order

21895120v1

"will be treated as final for purposes of section 1291 if it disposes of all issues raised in the post-judgment motion." (internal quotation marks and alterations omitted)). Metso, however, opted not to appeal that final, post-judgment order,[5] but now seeks to vitiate it in an appeal filed some 16 months after the fact.

Metso's argument that the mandate supersedes the unappealed Order in fact thwarts finality, because Metso now seeks to avoid the bond Order that lay to rest Metso's obligations as to the bond. Metso's position likewise defeats judicial economy. The District Court invested considerable time in crafting a reasonable and equitable format for the bond that stayed collections pending appeal. If, as Metso argues, the mandate *sub silentio* overruled the bond Order, such would vitiate the District Court's considered and discretionary decision, unravel orderly judicial process and render the District Court's efforts an exercise in futility. Ignoring a binding, unappealed order flouts judicial economy. Finally, Metso's approach promotes piecemeal adjudication. Metso's decision to ignore the Order it did not appeal has led to this appeal. While the Order was entered after Terex filed

---

[5] Even if the bond Order was deemed to be non-final for purposes of appeal until the judgment entered against Metso for the bond premium it owes, the bond Order unquestionably was law of the case established by the District Court in June 2012. This law of the case was not challenged by Metso in the District Court nor during Powerscreen's appeal. To the extent Metso can belatedly challenge the bond Order via this appeal (despite not having identified it as an order appealed from, *see* A130-132; A140-142), that ruling must be affirmed as an unquestionably sound exercise of the discretion entrusted to the District Court on such matters.

the prior appeal, Metso could have appealed the Order and had the appeal consolidated with Terex's appeal. Thus, none of the rationales underlying the mandate rule or the law of the case doctrine are served by blindly applying the mandate in this case.

### B. Exceptions to the Mandate Rule Should Apply.

"Deviation from the mandate rule is permitted only in a few exceptional circumstances, which include (1) when controlling legal authority has changed dramatically; (2) when significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; and (3) when a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005) (internal quotation marks omitted); *see also United States v. Robinson*, 690 F.2d 869, 872 (11th Cir. 1982).

Permitting Metso to vitiate the bond Order it did not appeal would result in a serious injustice. The District Court fashioned an equitable balance that protected Terex from Metso's overreaching demand for an unreasonable bond. Now, Metso asks this Court to erase the bond Order requiring it to reimburse Terex for unnecessary bond premium costs without ever considering the merits of that unappealed Order. Such is an impermissible end-around of the Order. "[A] party will not be permitted to argue before [this Court] an issue on which it has lost and

on which it has not appealed, where the result of the acceptance of its argument would be reversal or modification of the judgment rather than affirmance." *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 731 F.2d 840, 844 (Fed. Cir. 1984). Metso's proposed end-around is nothing more than an attempt to reverse or modify the bond Order compelling it to reimburse Terex for unnecessary bond premium costs. The injustice resulting from Metso's gamesmanship includes the obvious loss of the premium reimbursement to Terex as well as disrespect for the judicial process and the District Court's effort to craft an equitable framework for a stay.

The second exception mentioned above is for new evidence. Equity appears to supply the rationale supporting the exception—it would be unfair to strictly apply a mandate if previously unknown and significant evidence came to light affecting the underpinnings of the mandate. The same equitable logic applies to the facts here. The existence of the Order was known to the parties but it was unknown to this Court because it had not been appealed. Terex had no reason to appeal the Order because it fairly protected Terex from Metso's overreach. Metso did not appeal the Order but is now trying to undo the Order. Had the Order been appealed, it would have been reviewed for an abuse of discretion and no credible argument can be made that Judge Spatt abused his discretion when he required a bond sufficient to satisfy Metso's inflated request while protecting Terex from Metso's overreach by requiring Metso to pay for the portion of the bond that was

24

ultimately not needed. While the Order is not "evidence," the rationale supporting the second exception also supports application of an exception to these facts because the Order was not appealed and was unknown the this Court when it issued its mandate, through no fault of Terex.

The district court's judgment that Metso reimburse Terex for $500,000 should be affirmed because doing so is consistent with the rationales underpinning the mandate rule and the law of the case doctrine and reversal would lead to "the perverse result of allowing [Metso] to be in a better position by failing to raise [the bond] issue in an initial appeal." *Tronzo*, 236 F.3d at 1349 n.3.

## IV.   This Court May Reconsider Its Blanket Denial Of Costs In Light Of The Bond Order—A Fact Unknown To This Court At The Time Costs Were Denied Because Metso Did Not Appeal The Order.

The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts. The doctrine "is applied more or less strictly depending on the circumstances of the case." *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1550 (Fed. Cir. 1988), *overruled on other grounds*, *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992). "Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered." *Id.* This Court has

the power to reconsider whether a blanket denial of costs was correct. *See Exxon Corp*, 931 F.2d at 877 n.5 ("A Court that makes a decision has the *power* to reconsider it, so long as the case is within its jurisdiction." (quoting 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* para. 0.404[1] at 118 (2d ed. 1988))).

This Court, albeit without knowledge of the preexisting Order allocating the cost of the supersedeas bond, decided that each party would bear its own costs. This Court again has the case within its jurisdiction. This Court can change its prior pronouncement regarding costs to respect the District Court's well-reasoned and unappealed bond Order. As noted in *Jamesbury*, changing a ruling may be appropriate when doing so, upon "further reflection may allow a better informed ruling in accordance with the conscience of the court." *Jamesbury*, 839 F.2d at 1551 (quoting *Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2d Cir. 1979)).

This Court should modify its prior mandate to permit the District Court to enforce its bond Order because such Order was equitable, the District Court did not abuse its discretion in formulating the framework for a stay pending appeal and Metso did not appeal the Order. Conversely, permitting Metso to avoid the impact of the Order by relying upon the prior mandate, which issued without knowledge of the Order, is an affront to the orderly administration of justice.

## V.   **Metso's Other Arguments Seeking to Avoid the Bond Order Are Not Supported In Law Or Fact.**

Metso suggests Terex waived the right to have the unappealed bond Order enforced because it did not seek reconsideration of the mandate.   As discussed above, the bond Order was law of the case never challenged by Metso.   Thus, Terex reasonably expected that the bond Order would be enforced upon remand to the District Court.   Metso took issue with its obligation to repay the bond premium, for the first time, after the case was returned to the District Court.   Under these circumstances, no motion for reconsideration was necessary.

Moreover, upon Metso's appeal from the judgment resulting from the unappealed bond Order, this Court has power over it mandate, "not only to declare what [this Court] meant, but to change it as [the Court] think[s] the situation demands."   *Nat'l Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc.*, 198 F.2d 927, 927 (2d Cir. 1952) (citing 28 U.S.C. § 452, which provides that "[t]he continued existence or expiration of a session of a court in no way affects the power of the court to do any act or take any proceeding.").   Metso's appeal is its first, belated challenge to the Order; previously Terex had no reason to believe Metso would seek to evade its obligation to repay its share of the bond premium.   Since Metso has raised this Court's mandate on appeal, the situation now warrants its reconciliation with the District Court's first-in-time, and unappealed bond Order.

21895120v1

Metso relies upon *MacEwen Petroleum, Inc. v. Tarbell*, 136 F.3d 263 (2d Cir. 1998), for the proposition that it could not have appealed the Order.[6] Metso's reliance is misplaced. In *MacEwen*, the defendants attempted to appeal an order requiring them to post a bond as a condition of vacating a default judgment. *Id.* at 263. The Second Circuit determined it lacked jurisdiction because there was no final judgment or order from which an appeal could be taken. *Id.* at 264. The Second Circuit concluded that, if the Defendants wanted to appeal the issue, they could refuse to post the bond and a final judgment would be entered from which they could appeal. *Id.*

In this case, there was a final judgment, which was entered on March 3, 2011. A345-348. The District Court's post-judgment bond Order, entered on June 25, 2012, finally determined Metso's substantive obligation to reimburse its pro rata share of the cost of the supersedeas bond if Metso recovered less than $50 million. A44-45. Therefore, the bond Order was immediately appealable. *See*, *e.g.*, *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001) ("orders entered post-judgment in ordinary civil litigation . . . are generally appealable, *see Isidor Paiewonsky Assocs. v. Sharp Props., Inc.*, 998 F.2d 145, 150 (3d Cir. 1993),

---

[6] Metso's argument also misses the point. The bond Order was entered. Regardless of whether Metso could have appealed it, the bond Order became law of the case. Moreover, Terex notes that Metso did not include the bond Order in this appeal, which suggests that Metso recognized the appeal of that Order was untimely.

unless they are 'ministerial' or 'administrative,'" *id.*); *H.A. Jones Co.*, 745 F.2d at 631-32 (post-judgment contempt order was immediately appealable under 28 U.S.C. § 1292(c)(2) although damages had not yet been assessed because there were no additional proceedings contemplated by the district court aside from an accounting and all substantive issues had been adjudicated).

Metso attempts to reframe the actual issue appealed by representing that "[t]he district court held that Terex was entitled to its bond costs because Metso purportedly agreed that it would pay such costs if the Judgment were reversed." BB 25. The district court actually stated: "Simply put, Metso's obligation to bear its pro rata share of the bond premium stems from this Court's June 25, 2012 and August 3, 2012 orders and the plain terms of the bond itself, not from any agreement or contract entered into by the parties on the record." A19. Metso's attempt to recast the issue as a contract[7] dispute should therefore be rejected.

---

[7] To support its argument, Metso relies upon *Beatrice Foods Co.*, 930 F.2d 1572, 1574 (Fed. Cir. 1991). BB 25. Again, Metso misapprehends the import of the authority it cites. The "parties' intent" referenced in Beatrice is the intent of the parties to the bond—in this case Terex and its surety. Metso's intent, as a third party beneficiary, is irrelevant. *See id.* (construing bond terms in view of intent of contracting parties, i.e., the surety and principal); *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001) (no privity of contract between surety and third-party beneficiary of bond); *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) (contracts "are construed in accord with the parties' intent.").

## VI. The District Court Properly Exercised Its Discretion To Amend The Judgment To Include The Full Amount Of Bond Premium Owed By Metso.

On November 27, 2013, the District Court granted Powerscreen's motion to enforce the unappealed Bond Order, intending to require Metso to fully compensate Terex for the bond. A13-19. Simply put: "Metso recovered nothing. Accordingly, it is liable for its pro rata share, 100%, of the cost of the appeal bond[.]" A18. Because the District Court originally awarded only the first annual premium rather than the total amount paid by Terex for the bond, Terex advised the District Court of such clerical error. A132-136; A8. Exercising its sound discretion, the District Court corrected this mistake, and adjusted the award and judgment to cover the full $500,000 paid by Terex for the Bond. A4-12; A1-2.

To the extent Metso claims to be more capable of interpreting the bond Order and subsequent post-appeal order enforcing it than Judge Spatt himself, Metso has fundamentally misapprehended the judicial process. Construing the meaning of its own orders is "peculiarly within the province of the district court." *Suffolk*, 106 F.3d at 1117. Consequently, this Court should not disturb Judge Spatt's conclusion that not including the $100,000 bond premium in the November 27, 2013 Short Order enforcing the bond Order was a clerical error "absent a clear abuse of discretion." *Id.* As reflected by the carefully reasoned decisions below, none exits.

Metso's contention that its obligation to repay the $100,000 premium payment covering the bond period from July 6, 2013 through October 6, 2013 somehow differs from its obligation to pay for the prior year's premium is without basis. Following this Court's invalidation of the '618 Patent in May 2013, Metso proceeded to request rehearing and rehearing en banc. Of course, Metso must have had, at minimum, a good faith belief that it would prevail on its petition in order to pursue it. *See* Fed. Cir. R. 35(b). Powerscreen's victory was still at risk and, concomitantly, so remained Powerscreen's obligation to provide the security of the $50 million bond required by the District Court. The mandate did not enter, and thus Powerscreen's appeal did not conclude, until August 16, 2013. It was not until such time that Powerscreen was free to seek relief from continued maintenance of the bond. Powerscreen promptly did so, requesting release of the bond on September 9, 2013. Moreover, Terex mitigated the amount due by negotiating with the surety during the pendency of Metso's petition for rehearing to arrange for quarterly, rather than annual, premium payments.

Furthermore, as the District Court concluded, Metso waived its arguments that the $100,000 installment is somehow different:

> The Court emphasizes that the issue of the $100,000 premium payment was previously before the Court, and Metso had the opportunity to, but did not argue, as it does now, that this payment "stands in an entirely different category than the $400,000 award" in light of Powerscreen's alleged dilatory tactics with respect to the final bond premium payment.

A11.  In any event, the District Court's conclusion that "there were no unnecessary dilatory tactics by Powerscreen in regard to the additional $100,000 bond payment" (A11), is entitled to deference.  *See Esquire Radio*, 804 F.2d at 796.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Terex respectfully requests that the Court affirm the decisions below.

Dated: June 26, 2014                    Respectfully submitted,

 s/ *Jon R. Trembath*
Jon R. Trembath
Allison S. Wallin
Alexander C. Clayden
Lathrop & Gage LLP
950 Seventeenth St., Suite 2400
Denver, CO 80203
(720) 931-3200

*Attorneys for Defendant-Appellee*
*Terex Corporation*

21895120v1

## PROOF OF SERVICE

I hereby certify that this day, I caused to be electronically filed with the U.S.

Court of Appeals for the Federal Circuit a complete and correct copy of the

foregoing **RESPONSE BRIEF FOR DEFENDANT-APPELLANT TEREX**

**CORPORATION** by means of the Court's EM/ECF system, which will send

notice of such filing to the following registered CM/ECF users:

> Michael C. Stuart
> COZEN O'CONNOR
> 277 Park Avenue
> New York, New York 10172
> mstuart@cozen.com

June 26, 2014                         s/ *Jon R. Trembath*
                                          Jon R. Trembath
                                          Allison S. Wallin
                                          Alexander C. Clayden
                                          *Attorneys for Defendant-Appellee*
                                          *Terex Corporation*

Upon acceptance by the Court of the e-filed documents, six paper copies will

be filed with the Court, via Federal Express, within the time provided in the

Court's rules.

June 26, 2014                         s/ *Jon R. Trembath*
                                          Jon R. Trembath
                                          Allison S. Wallin
                                          Alexander C. Clayden
                                          *Attorneys for Defendant-Appellee*
                                          *Terex Corporation*

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FEDERAL CIRCUIT RULE 32(A)

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.    This brief complies with the type volume limitation of 32(a)(7)(B), Fed.R.App.P. because:

- this brief contains 7,874 words, excluding parts of the brief exempted by 32(a)(7)(B)(iii), Fed. R. App. P., and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of 32(a)(5), Fed. R. App. P. and the type style requirements of 32(a)(6), Fed. R. App. P. because:

- this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14 Times New Roman font.

Dated: June 26, 2014           Respectfully submitted,

                              *s/ Jon R. Trembath*
                              Jon R. Trembath
                              Allison S. Wallin
                              Alexander C. Clayden
                              Lathrop & Gage LLP
                              950 Seventeenth St., Suite 2400
                              Denver, CO 80203
                              (720) 931-3200

                              *Attorneys for Defendant-Appellee*
                              *Terex Corporation*